KOST v. BENDER.

## John Kost v. David Bender.

*Negotiable paper : Purchaser from bona fide holder : Payee.* The general rule, that a purchaser from a *bona fide* holder of negotiable paper, takes it with all the rights of such holder, whether he has notice of any infirmity, as between the original parties, or not, is subject to the exception that, when the payee becomes such purchaser, he takes it subject to all equities and defenses originally existing against it.

*Evidence: Hearsay : False representations: Market value.* Statements made to defendant by people living in the neighborhood, are not competent evidence of the falsity of representations, alleged to have been made by the plaintiff on a sale of lands to the defendant, that there was oil on the lands, and that it had been found there in abundance, and that the land, even if not valuable for oil, would sell for a high price for farming lands; evidence of such statements is hearsay.

Such statements are not competent on the question of the market value of the lands.

*Incompetent evidence : Objections waived.* One who has objected to incompetent evidence, which tends to the proof of certain facts, if he afterwards proves the same facts himself, thereby waives the error; but not so if he simply gives evidence to the same points, tending to disprove the incompetent testimony.

*Immaterial evidence.* Where the maker of a note defends on the ground that it was given on the purchase of lands from the payee, and that the latter made false and fraudulent representations of the value of the lands for mineral oil, evidence that such purchaser afterwards expended large sums in sinking wells and endeavoring to produce oil on the lands, is immaterial.

*Evidence : Hearsay.* The testimony of one who has no personal knowledge on the subject, and who testifies only from what others have told him, as to the value of surface indications of the presence of oil beneath the surface of lands, is incompetent.

*False assertions of value : Deceit.* One who, during the negotiations for the sale of lands, professes to have peculiar scientific knowledge as to the probability of lands proving valuable for the production of oil, and falsely represents the value for oil, of the lands he is endeavoring to sell, renders himself liable, if the purchaser relies upon such professions, and is deceived by such false assertions of value.—*Picard .v. McCormick, 11 Mich., 68.*

*Charge to the jury : False representations to third person.* An instruction to the jury, that where A makes false and fraudulent representations to C, as to lands he is trying to sell to B, and C, believing them to be true, at the request of A urges B to purchase, A is liable to the same extent as if the representations had been made directly to B, is too broad, as it leaves out of consideration the necessary elements of communication to B of the fraudulent representations, and of his reliance upon them.

*False representations on prior sale.* Representations, made on a former sale of an adjoining parcel to the same person, which embraced the lands covered by a second sale, and which were repeated on the latter sale, are competent evidence in a suit involving the question of liability for fraudulent representations on such second sale.; and the circumstances, that the second sale was not in contemplation when the first was made, and that the vendor was not then in position to make it, are immaterial.

*Heard October 11. Decided October 15.*

Error to Lenawee Circuit.

*A. L. Millard*, for plaintiff in error.

*Howell & Watts*, and *C. A. Stacy*, for defendant in error.

COOLEY, J.

The declaration in this case is upon a promissory note which was given to the plaintiff by the defendant as part payment on a purchase of lands supposed to be valuable for the production of mineral oil. The defense is, that the defendant was defrauded in the sale, and has sustained damages in consequence, which he is entitled recoup.

The note is negotiable, and was transferred by the plaintiff, before it fell due, to a party, who, he claims, was a *bona fide* purchaser, without notice of any infirmity, and who afterwards, for a new consideration, sold it back to him. And the plaintiff further claims, that the note, having once passed to a *bona fide* holder in whose hands it was subject to no defense, of fraud in inception, or defect in consideration, is forever thereafter discharged of such defense, into whose hands soever it may afterwards come.

It is perfectly true as a general rule, that the *bona fide* holder of negotiable paper has a right to sell the same, with all the rights and equities attaching to it in his own hands, to whoever may see fit to buy of him, whether such purchaser was aware of the original infirmity or not. Without this right he would not have the full protection which the law merchant designs to afford him, and negotiable paper would cease to be a safe and reliable medium for the exchanges of commerce. For, if one can stop the negotiability of paper against which there is no defense, by giving notice that a defense once existed while it was held by another, it is obvious that an important element in its value is at once taken away.

But I am not aware that this rule has ever been applied

to a purchase by the original payee, nor can I perceive that it is essential to the protection of the innocent indorsee, that it should be. It cannot be very important to him, that there is one person incapable of succeeding to his equities, and who consequently would not be likely to become a purchaser. If he may sell to all the rest of the community, the market value of his [security is not likely to be affected by the circumstance, that a single individual cannot compete for its purchase, especially when we consider that the nature of negotiable securities is such that their market value is very little influenced by competition. Nor do I perceive that any rule or principle of law would be violated by permitting the maker to set up this defense against the payee, when he becomes indorsee, with the same effect as he might have done before it had been sold at all, or that there is any valid reason against it.

The ground of defense is, the claim for damages which the maker has, by reason of the fraud alleged to have been practiced upon him. It is not pretended that this claim is extinguished by the sale of the note, but only that it is thereby separated from the note and incapable of again becoming annexed to it. After the payee had sold the note, he might have been sued upon this claim, and when he again becomes the holder, he is indisputably liable in some form. The question, then, seems to be, whether the maker shall be compelled to submit to judgment on his note, and then resort to a separate action for damages, or whether all disputes growing out of the one transaction shall be submitted to one jury.

In general, the policy of the law is to avoid circuity of action, wherever it can be done without confusion; and cases of a counter claim like this, are always held to be proper cases for the application of this rule of policy. And if we do not apply it in this case, it must be because

of a purely technical reason, and not because the interests of justice would be prejudiced.

The technical reason is, that by the sale of the note to a *bona fide* holder the claim for damages has been severed from it; and the payee when he again becomes holder, will sue upon it in his character of indorsee, and cannot have his demand reduced by a claim which could only be offset because of its being an incident to the debt, and which ceased to be an incident when the first transfer took place. But there are many cases in which the law, to avoid circuity of action, disregards such intermediate transactions, and remits the parties to their original rights and equities, with a view to the most speedy and effectual remedy. When this defense was severed from the note by the first transfer, it was done by means of the plaintiff's own wrong. If the defendant had a legal and just defense to the note, either in whole or in part, arising from the conduct of the plaintiff, it was the duty of the latter to recognize and allow it, and he had no moral right to cut it off, or to attempt so to do, by any transfer. But, having done so, and afterwards acquired the note a second time, the law, we think, will not permit him to take advantage of this wrong, but will remit the defendant to his original rights. Such, we think, should be the rule; because it avoids circuity of action, expense to the parties, and inconvenience to the courts, without, at the same time, endangering any substantial rights. We had occasion to recognize an application of the same principle, in *Dubois v. Campau, 24 Mich., 360*, in which a party, whose duty it had been to pay certain taxes, sought afterwards to claim the benefit of a tax-title which was based upon his default to pay them, and which a third party had bought in, and then sold to him. It was held in that case that he had no more right to claim the benefit of the title he had thus bought in,

than he would have had if he were the original pur-
chaser at the tax sale; and we think the same rule is
applicable here, and rests upon reasons equally strong.

It is also assigned for error, that hearsay evidence was
admitted to establish the falsity of the plaintiff's represen-
tations regarding the land.   The representations alleged,
were in regard to the surface indications that oil was to
be found upon the land, the fact that it had been found
in abundance, and that the land, even if not valuable for
oil, would sell for a high price for farming lands.   To
prove these representations false, the defendant was allowed
to testify that he went into the neighborhood where the
land was, and made inquiry among the people, and men who
had bored old wells, and who told him positively that they
never found any oil in those old wells; that he thought
they knew about oil, and about the boring; that the prevail-
ing opinion was, by all, that parties had gone there to bore,
and had bored.   They knew about it.   The witness would
judge from the appearance of the people that they knew
the value of oil.   The prevailing opinion was, there was no
oil there.   The witness met intelligent or scientific men
there—one in particular.   They knew, there in the neigh-
borhood, that the bores were put down.   They all knew
that the borings had been put down.   They knew all
about it.   They were living right there in the neighbor-
hood.   That he made inquiries, what the lands were worth,
and if he was right about the statement that was made to
him, it was twelve or fifteen dollars per acre.

Now, all this evidence was palpably hearsay, and it was
plainly the duty of the defendant to call as witnesses, the
parties who communicated the information to him, instead
of giving their unsworn statements to the jury.   The admis-
sion of these statements was, consequently, error, unless the
plaintiff has failed properly to except to them, or unless

there was something peculiar in the case which excused their reception.

Some of the statements are claimed to have been made in answer to questions to which they were not responsive; but a careful examination of the record does not satisfy us that such was the case. In one or two instances, the counsel for the plaintiff did not assign the reason for his objection, but, as the questions followed immediately after others of the same nature, which had been sustained after the proper reason had been assigned, we think neither counsel nor court could have failed to understand the ground of exception. But it is also claimed, that the error, if any, was cured by the plaintiff himself introducing evidence subsequently, covering the same ground, and proving substantially the same facts.

If one who has objected to incompetent evidence which tends to the proof of certain facts, afterwards proves the same facts himself, he may well be held to have waived the error. But he does not waive it by simply giving evidence to the same points; for he may feel compelled to do that, in order to disprove the incompetent testimony. If, for instance, a question of value is in dispute, and one side gives incompetent evidence to prove it to be very great, the other side does not waive this error by giving competent evidence to prove it to be less. If he did, there would be no resource after such an error had been committed, except to abandon the case, and trust to correction by another tribunal. In this case it would appear that the principal matters in dispute were the representations of the plaintiff as to the surface indications, and as to the fact that oil had previously been found; and whether these representations were true. Upon these questions the plaintiff very properly put in the testimony of witnesses residing in the vicinity, and who could speak from their own knowl-

edge; and this testimony being entirely competent, he could waive nothing by exercising his right to give it.

It is also insisted that what the defendant testified as to statements made to him regarding the worth of the land, was competent on the question of market value; but we think not. It does not clearly appear that they were the statements of more than a single person; and the jury could only have received at second hand the unsworn statements of a party who might have been, and should have been, examined under oath. There is nothing to show that the defendant ever made any such inquiries or investigations as could render him competent to express any opinion whatever on the subject of market value, or even to judge whether the opinion given him was or was not honestly and deliberately expressed.

The defendant was also allowed to testify that considerable sums were expended by him and his associates, after the purchase, in sinking wells, and endeavoring to produce oil upon the lands bought. This was immaterial to the controversy, and should have been excluded. The plaintiff's representations were no warranty that productive wells should be found, and the amount of expenditure in the attempt to obtain them, was not important in this suit.

The testimony of Beecher, as to the value of surface indications, was also incompetent. He had no personal knowledge whatever on the subject, and only testified from what others told him. Here again, it is evident, that the persons communicating the information should have been called to verify it on oath.

It is alleged for error, that the court erred in giving a rule of damages to the jury which did not exclude from consideration the opinions expressed by the plaintiff, as to the value of the land, in the course of the negotiations. The position of the defendant is, that the plaintiff professed

25 MICH.—66.

to have peculiar scientific knowledge, which enabled him to express reliable opinions as to the probability of the lands proving valuable for the production of oil; that the defendant relied upon these professions, and was deceived by the false opinions which the plaintiff expressed.  If the defendant gave evidence tending to prove this case, we do not think the court erred in laying down the rule of damages. Perhaps some portion of the charge was not sufficiently guarded in language, but the liability of a party for a false opinion, under such circumstances, is well settled.—*Picard v. McCormick, 11 Mich., 68.*

The instruction to the jury, that if the plaintiff made false and fraudulent representations to Beecher, who believed them to be true, and, by request of the plaintiff, urged the defendant to purchase, the plaintiff is liable to the same extent as if the representations had been made directly to the defendant, was too broad.  It is consistent with this proposition, that Beecher never communicated to the defendant the fraudulent representations made to himself, and that, in fact, his advice to the defendant was not influenced by them.  It falls short, therefore, of showing that defendant was affected by the falsehoods to Beecher.

Error is assigned upon that portion of the charge which permitted the jury to consider representations made by the plaintiff, concerning an adjoining parcel of land previously sold by him to defendant for the same purpose, as having a bearing upon this controversy.  The claim of the defendant is, that the representations made on the first sale, embraced the lands afterwards sold, and were repeated as applicable to such other lands, on the second sale.  If so, he was clearly entitled to prove them, and the circumstance, that the second sale was not in contemplation when the first was made, or that the plaintiff was not then in position to make it, could have no materiality.

For the errors pointed out, the judgment must. be reversed, with costs, and a new trial ordered.

The other Justices concurred.