# HOLLIDA & BALL

*v.*

# WILLIAM H. HUNT.

1. PATENT RIGHTS—*constitutionality of State law relating to sales.* The act entitled "An act to regulate the sale of patent rights, and to prevent frauds connected therewith," approved March 25, 1869, is unconstitutional and void, as attempting to regulate and control, by State legislation, matters of which the Congress of the United States has exclusive jurisdiction and control under the federal constitution.

2. SAME—*rights of patentees derived exclusively under the laws of Congress.* The monopoly or exclusive right of making, using and selling the improvement invented, and which is secured by letters patent, is created by act of Congress, and no rights can be acquired under such letters, except such as are authorized by statute, and in the manner the statute prescribes.

3. The right to vend necessarily implies the power to do so wherever the jurisdiction of the authority conferring the right extends. The power to regulate and control a right derived under national grant, by State legislation, necessarily concedes the supremacy of the latter. If a State has the power to regulate the sales of patent rights, there is nothing to prevent it from entirely prohibiting the same.

4. SAME—*law discriminating against notes taken on sales.* It is undoubtedly within the power of the legislature to prescribe the form and declare the effect of negotiable instruments, but it has not the constitutional power to discriminate prejudicially against promissory notes taken on sales of patent rights, as such legislation tends, to a certain extent, to destroy the right granted by Congress to sell rights with the same freedom that may be exercised in regard to any other property, according to the common and usual course of trade.

5. If a patentee complies with the act of Congress, which is paramount in respect to the rights and privileges secured to him, he will have the right to go into the open market, anywhere within the United States, and sell his property in the invention, notwithstanding any State law to the contrary.

6. PAROL EVIDENCE—*varying written contract.* Where the contract of the parties is reduced to writing, parol evidence, offered to show a different contract from that shown by the writing, is properly excluded.

APPEAL from the Circuit Court of Mercer county; the Hon. GEO. W. PLEASANTS, Judge, presiding.

This was an action of assumpsit, by William H. Hunt, against Hollida & Ball, upon a promissory note given by the latter to Charles T. Davison, and assigned by him to plaintiff. The plaintiff recovered in the court below, and the defendants appealed.

Messrs. PEPPER & WILSON, for the appellants.

Messrs. BASSETT & CONNELL, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The question is presented, by the first error assigned, whether the act entitled "An act to regulate the sale of patent rights, and to prevent frauds connected therewith," approved March 25, 1869, can be sustained as a valid and constitutional enactment.

The substance of its several provisions is as follows:

The first section makes it unlawful for any person to sell, barter, or offer to sell or barter, in any county in the State, any patent right, without first making the affidavit and proof required by the second section.

The second section requires any person desiring or intending to barter or sell any patent right, before offering to barter or sell the same, to submit to the clerk of the county court of the county in which he desires to pursue such business, for his examination, the letters patent, or a certified copy thereof, and his authority to sell or barter the right so patented, and, at the same time, make a prescribed affidavit; and if such clerk be satisfied that the right so intended to be sold or bartered has not been revoked or annulled, and that the applicant is duly empowered to sell the same within such county, etc., the clerk shall record the affidavit and letters patent, and give a certificate thereof.

The third section requires any person to whom such certificate may be issued, to exhibit the same on demand.

The fourth section provides that there shall be written or printed in every promise or obligation in writing, the consideration of which, in whole or in part, shall be a patent right, the words, "given for a patent right;" and all such obligations or promises, if transferred, shall be subject to all defenses, as if owned by the original promisee.

The fifth section imposes penalties for a failure to comply with the preceding sections.

The sixth section requires the payment of a fee of $3 to the county clerk, for his services in taking proof.

The eighth clause of section 8, article 1 of the constitution of the United States, confers authority upon Congress "to promote the progress of science and useful arts, by securing, for limited times, to authors and inventors, the exclusive right to their respective writings and discoveries."

The power thus conferred has been exercised by Congress since the organization of the government; and, without undertaking to notice the various provisions of the statutes of the United States relating to the subject, it is sufficient to say these provisions fully prescribe under what circumstances and in what manner patents shall be issued; how they may be transferred, and the character and extent of the rights invested in the patentee or his assignees.

When the patent is granted, the rights of the patentee are complete. He has then a property right in it, which can not even be impaired by a subsequent repeal of the law under which it was granted. *McClurg* v. *Kingsland*, 1 Howard, 206.

" The monopoly granted to the patentee," says TANEY, C. J., in *Gayler* v. *Wilder*, 10 Howard, 494, "is for one entire thing: it is the exclusive right of making, using, and vending to others to be used, the improvement he has invented, and for which the patent is granted. The monopoly did not exist at common law, and the right, therefore, which may be exercised under it can not be regulated by the rules of the common law. It is created by the act of Congress, and no rights can be

acquired under it unless authorized by statute, and in the manner the statute prescribes."

The right to vend necessarily implies the power to do so wherever the jurisdiction of the authority conferring the right extends. To say that a right exists, yet it can only be exercised on such terms and conditions as may be imposed by an authority other than that conferring the right, necessarily concedes the supremacy of the latter.

It was said by MARSHALL, C. J., in *McCulloch* v. *The State of Maryland*, 4 Wheaton, 426: "The great principle is, the constitution, and the laws made in pursuance thereof, are supreme; that they control the constitutions and laws of the respective States, and can not be controlled by them. From this, which may be almost termed an axiom, other propositions are deduced as corollaries. * * * 1st, That a power to create implies a power to preserve. 2d, That a power to destroy, if wielded by a different hand, is hostile to, and incompatible with, these powers to create and preserve. 3d, That where this repugnance exists, that authority which is supreme must control, not yield to that over which it is supreme."

If this legislation can be sustained, upon the same principle nothing can be found to prevent the State from entirely prohibiting the sale of patent rights; and if this may be done here, it may also be done in every other State in the Union, and thus we would have the spectacle of a right granted under the laws of the United States, pursuant to an express provision of the constitution, annihilated by the laws of the several States.

It is conceded in the argument that the first, second and third sections of the act can not be sustained; but it is insisted that the same objections do not exist against the fourth section, for, it is claimed, it is competent for the legislature to require that negotiable instruments shall express upon their face for what they are given, and to declare what shall be the legal effect of their assignment.

A majority of the court are of opinion that, while it is undoubtedly within the power of the legislature to prescribe the form and declare the effect of negotiable instruments, this section can not be regarded as limited to this object. It has nothing to do with negotiable instruments in general, but is exclusively restricted to such as are given in whole or in part, for a patent right, and deprives them of one of the most important attributes of negotiability. It is a marked discrimination against the traffic in patent rights, which can not fail to seriously prejudice and impair the rights of patentees and their assignees.

The right to vend, guaranteed by the general government to patentees, is to traffic and sell with the same freedom that may be exercised in regard to any and all other property, according to the common and usual course of trade and business, and whatever tends to prevent this, necessarily tends, to that extent, to destroy the right granted.

Such legislation is repugnant to, and inconsistent with, the powers exercised by Congress with regard to patent rights, and can not be upheld. *McCulloch* v. *Maryland, supra*; *Gibbons* v. *Ogden,* 9 Wheaton, 1; *Brown* v. *Maryland,* 12 id. 419; *Sinnot et al.* v. *Davenport,* 22 Howard, 227; *Ward* v. *Maryland,* 12 Wallace, 418; *Woodruff* v. *Perham,* 8 id. 130.

A similar enactment of the legislature of the State of Indiana, was held, by the Circuit Court of the United States for that district, unconstitutional. The case was that of Major J. Robinson, *ex parte,* and the opinion was delivered by Mr. Justice DAVIS, of the Supreme Court of the United States. We quote from the opinion as published in 2d Bissell's Reports, 309. He said: " The property in inventions exists by virtue of the law of Congress, and no State has a right to interfere with its enjoyment, or to annex conditions to the grant. If the patentee complies with the law of Congress on the subject, he has a right to go into the open market, anywhere within the United States, and sell his property. If this were not so, it is easy to see that a State could impose

8—70TH ILL.

terms which would result in a prohibition of the sales of this species of property within its borders, and in this way nullify the laws of Congress, which regulate its transfer, and destroy the power conferred upon Congress by the constitution."

From the views expressed, it is impossible to sustain the validity of either section of this statute.    There was no error in sustaining the demurrer to the pleas.

The only other error assigned relates to the exclusion of evidence offered by appellant.    The contract between the parties was reduced to writing.    The evidence offered was for the purpose of proving, by parol, a different contract from that shown by the writing.    This was inadmissible, and the court properly excluded the evidence.

The judgment is affirmed.

*Judgment affirmed.*