Boynton, J.
The several questions arising upon the record will be considered without special reference to the order in which they' were presented in argument'. We meet at the out *382 set the question of the validity of the act of May 4, 1869 (66 O. L. 93), entitled “An act to regulate the execution and transfer of notes given for patent rights.” The court of common pleas held the act valid, and gave to it the effect of preventing a judgment in favor of the plaintiffs below upon the note sued on, if the words, “ Given for a patent right,” were omitted therefrom by design, and the plaintiffs had knowledge that the consideration of the note was an interest in a patented invention, although the patent was perfectly valid. Whether the district court was moved to reverse the judgment of the court of common pleas upon the ground that the act above referred to was in conflict with section 8 of article 1 of the constitution of the United States, and of the act of congress relating to granting letters patent, or upon the ground that, assuming the validity of the statute, the court erred in the construction placed upon it, does not clearly appear. But as the validity of the act is directly •involved, it becomes our duty to decide upon it. The whole purpose of the act, as was stated in State v. Brower, 30 Ohio St. 101, was “to enable the makers of negotiable instruments, given for patent rights, to .make the same defense thereon, against any holder thereof, that could be made against the original holder or party to whom it was given.” This being the manifest aim and purpose of the act, it follows, that before it can be declared to be in conflict with the • act of congress, it must clearly and decisively appear, from a consideration and comparison of the provisions of the two acts, that the rights which the act of the state was intended to secure to the maker of the note, are repugnant to the rights of the patentee, derived under the act of congress. To determine whether this repugnancy exists or not, it is necessary to ascertain what effect the granting of letters patent has upon the right of property in the thing or article patented. This can best be done by reference to decided cases.
In Jordon v. Overseers of Dayton, 4 Ohio, 295, the court, upon consideration of the nature and extent of the rights acquired under letters patent for useful discoveries, said: “ Although the inventor had, at all times, the right to enjoy the fruits of his own ingenuity, in every lawful form of which its *383 use was susceptible, yet, before the enactment of the statute, he had not the power of preventing others from participating in that enjoyment to the same extent with himself; so that, however the world might derive benefit, no profit ensued to himself. The ingenious man was therefore led either to aban•don pursuits of this nature, or to conceal his results from the world. The end of the statute was to encourage useful inventions, and to hold forth, as inducements to the inventor, the ■exclusive use of his invention for a limited period of time. The sole' operation of the statute is to enable him to prevent •others fi’oin using the products of his labors, except with his ■consent. But his own right of using is not enlarged or affected.” This doctrine was expressly approved by the suprem e •court of the United States, in Patterson v. Kentucky, 97 U. S. 501, although the question arising — and decided — in that case, had more especial reference to the right of a state, in the exercise of its police powers, to regulate and" control the use of an article patented under the act of congress.
By a statute of Kentucky, oils and fluids, which might or •could be used for illuminating purposes, and which would .ignite and permanently burn at a temperature less than 130° Fahrenheit, were condemned for illuminating purposes, and their use prohibited. Patterson was indicted for selling Aurora •oil in violation of said act. He claimed, in defense, that the zright to sell said oil in any part of the United States, although within the class of oils condemned by the statute, was secured to him as assignee of the patentee by an assignment of letters patent granting to the patentee and his assigns the exclusive right to sell said oil in any part of the United States and the territories thereof; and insisted, that “ no state could, consistently with the federal constitution and the laws of congress, prevent or obstruct the exercise of that right, either by express words of prohibition, or by regulations which prescribe tests to which the patented article could not be made to conform.” In ■denying the validity of this claim, tLe court, speaking through .Mr. Justice Harlan, said: £: Congress is given power to promote the progress of science and the useful arts. To that end it may, by all necessary and proper laws, secure to inventors, *384 for limited times, the exclusive right to their inventions. That power has been exerted in the various statutes prescribing the terms and conditions on which letters patent may be obtained. It is true that letters patent, pursuing the words of the statute, do, in terms, grant to the inventor, his heirs and assigns, the exclusive right to make, use, and vend to others his invention or discovery, throughout the United States and the territories, thereof. But, obviously, this right is not granted or secured, without reference to the general powers which the several states of the Union unquestionably possess over their purely domestic affairs, whether of internal commerce or of police.” And furthér on in the opinion it was added, that “ the right to' sell the Aurora oil was not derived from the letters patent, but it existed, and it could have been exercised before they were issued, unless it was prohibited by valid local legislation. All which they primarily secure is the exclusive right in the discovery.” From these cases, it Would seem clearly to follow, that the only right the patentee acquired by his letters patent, which he did not possess before they were granted, is the right to exclude others from a common use and enjoyment of the thing or article patented, without his consent, thereby securing to himself, for a limited period of time, a monopoly of the benefits arising from its lawful use.
The act of congress under which the letters patent were issued does not undertake to impart negotiability to promissory notes; nor does it, in any manner, prescribe, or attempt to prescribe, the character or form of security that may be taken upon a sale of an interest in the patent. Nor does it give to a note payable to order or bearer when in the hands of an .innoeent holder the effect to cut off defenses existing against the payee-or indorser. It grants to the patentee, and his assigns, the exclusive right, for a fixed period, to make, use, and vend ■to others his invention or discovery throughout the United States and the territories thereof. U. S. Revised Statutes, § 4884.
This is the extent of the immunity or privilege which the act confers. The right to regulate the form and prescribe the effect of paper taken • in commercial transactions has always *385 been regarded as belonging to the states, and such right has .been exercised in this state during the whole period of its existence. 1 Chase, 221.
If the act of congress were held to confer, of its own force, the right to receive negotiable paper upon a sale by the patentee of an interest in the invention, accompanied by such incidents or immunities as will protect the same in the hands of an innocent holder against prior equities or defenses, it would seem to require a uniform operation throughout the United States; and hence, in those states where it is provided that a transfer of paper, although in form and in fact negotiable, shall not impair the right to any defense existing against the payee, the effect would be to defeat the operation of the law of the state as respects property in patented inventions and discoveries, thereby giving to such property an immunity which is denied to every other species or kind. It is very clear that the act was intended to have no such effect.
But the objection is urged, that such legislation imposes conditions upon the transfer of patent rights, and thereby interferes with, and discriminates against, the right that the patentee acquired under his letters patent. This is the ground upon which those decisions rest, that hold such legislation void as in conflict with the act of congress.
The fact, however, seems to be completely ignored that the exclusive right, secured to the patentee and his assigns, to malee, use, and vend the discovery, is property, in no higher sense, and possesses no greater incidents or immunities, than property acquired by purchase at common law.
In a strict legal sense, property, whether the term is applied to things animate or inanimate, consists in the right to their use, enjoyment, and disposition. 1 Black. Com. 138; 2 Kent, 320; Wynehamer v. The People, 13 N. Y. 378 ; Morrison v. Semple, 6 Binn. 98; Eaton v. B. C. & M. R. R. Co., 51 N. H. 511. The right of property in a patented invention or discovery, and a right of property in any other article or thing which is the subject of ownership, are the same. The jus disponendi belongs to both. The owner of either has the complete right to sell or give away the entire interest that he pos *386 sesses. "With this right the statute in nowise interferes. But the legislature, in our judgment, has as complete power to withdraw from negotiable paper that quality which protects an indorsee against defenses existing against the payee or indorser, where the same was given for an interest in a patented invention, as where the same was given for any other kind of property.1 To hold otherwise would be, in effect, to deny the power of the legislature to repeal the act of February 20, 1820 (1 S. & C. 862), which prescribes the form and effect of negotiable instruments, and to substitute therefor another, limiting the effect of such paper in its power to cut off prior defenses thereto, to certain classes of commercial transactions. That this may be done by the legislature is obvious enough.
JBut there is another consideration which has a very significant bearing upon the point under discussion, and that is, that no injury results to the patentee by subjecting negotiable paper received for an interest in the invention to the same defenses in the hands of an indorsee before maturity, as could be interposed against it before it was negotiated. If the patent is valid, and there is no fraud in its sale, there can be no defense to the note in an action against the maker by whomsoever brought. Whoever in such case owns .the note may recover its full amount. And whether the note is negotiable or not, is quite immaterial.
But if the patent is worthless, and consequently furnishes no consideration for the note, such note in the hands of the payee is void; and if, being negotiable, he sells or transfers it to an innocent holder before maturity, for value, he, by that act, perpetrates a fraud upon the maker, for which he is liable to the full extent of the injury caused by such sale and transfer. Darst v. Brockway, 11 Ohio, 462; Decker v. Mathews, 2 Kern. 313; Calkins v. Smith, 48 N. Y. 614; Kost v. Bender, 25 Mich. 515; Murray v. Burling, 10 Johns. 172.
Upon the same principle, and as a sequence from it, where the payee transfers negotiable paper, void in his hands, to an innocent holder, and re-purchases from him or a subsequent holder, the paper becomes affected with the original infirmity, and the payee cannot recover. Kost v. Bender, supra ; Ken *387 nedy v. Daly, 1 Scho. & Lef. 379; 1 Daniels on Neg. Ins. § 805.
Tlie same principle applies where estates held in trust are •conveyed by the trustee to a bona fide purchaser, and re-purchased by him from the same or a subsequent purchaser. In such case the trust re-attaches. Church v. Ruland, 64 Penn. St. 432; Shutt v. Large, 6 Barb. 373; 1 Story Eq. Juris. §§ 409, 410 ; 1 Perry on Trusts, § 222. Hence, the only effect of the statute being to let in defenses against the indorsee or "transferree, upon which defenses, or the facts constituting them, if the statute did not exist, the payee would be liable to the maker, if the latter was compelled to pay the note to an inno■cont holder, it is difficult to see that the statute interferes with •or deprives the payee of any substantial right.
The cases cited in argument in support of the alleged invalidity of the statute are divisible into two classes. To the first Ex parte Robinson, 2 Biss. 309, and Chittenden v. White, 23 Minn. 24, may be said to belong; but an examination of the •statute, the effect of which was there involved, shows the two ■cases to be clearly distinguishable from the present. The other eases seem - to support the claim of the defendants in error '(Hollida v. Hunt, 70 Ill. 109; Woolen v. Banker, 6 Am. L. Record, 236 ; Cranson v. Smith, 37 Mich. 309; Helm v. First National Bank of Huntington, 43 Ind. 167; 53 Ind. 454); but it is a noticeable fact that in none of them, except Hollida v. Hunt, is any allusion made to the question of the power of the state to prescribe the form and declare the effect of negotiable paper; and in that case, all that is said upon the subject is that the section requiring the words, “ Given for a patent right,” to be written or printed on the note, cannot be regarded as limited to that object.
The implication from this intimation seems to be, that if the •statute were limited to the object of regulating the form and •declaring the effect of negotiable paper, it would not be opposed to the act of congress; but not being limited to that object, the repugnancy exists. If this is the principle asserted, it seems to us to be opposed to the decided current of authority, which holds that the motives of the legislature, in the exercise *388 of an admitted power, cannot be inquired into. Cooley ConstLira. 186, and cases there cited.
This point was directly involved in Doyle v. Continental Ins. Co., 94 U. S. 535, where it was said, in a ease of alleged, conflict between a state statute and an act of congress, that if' the act of the state is otherwise legal, it is quite out of the-power of any court to inquire what was the intention of those-enacting the law.
In Haskell v. Jones, 86 Penn. St. 173, in construing a similar act to the one under discussion, the court, while granting that no state could interfere with the right of a patentee, secured tollina by the acts of congress, to sell and assign his patent, held that such was not the operation of the act, and that there was-nothing therein interfering with any just right of the holder of a valid patent.
To the same eftoct is Hunter v. Henninger, subsequently decided by the same court (37 Leg. Int. 412). .Such seems to us-the sounder doctrine, and we therefore hold that the act in question is not in conflict with the constitution of the United States, nor with the act of congress relating to the issuing of letters patent.
The court charged the jury, that if the words “ Given for a patent right ” were omitted from the note by design, and the plaintiff below had knowledge that the note was given for an interest in the patent, they could not recover upon it, although the patent was perfectly valid. It is true that the second section of the act makes it a penal offense, “ to take, purchase, sell or transfer ” any promissory note, not having said words written or printed legibly and prominently on the face thereof, with knowledge- that the eon•sktoration of the same consisted of a right acquired in the patented invention; and it is also true, as a general rule, that v. core a statute prohibits an act and affixes a penalty to its-performance, the act is void. But where the law which prohibits the act, or contract, at the same time limits its effect, or •do lares the consequences which shall follow its violation, the-general rule does not apply. Rossman v. McFarland, 9 Ohio St. 369; Vining v. Bricker, 14 Ohio St. 331. The question *389 is one of legislative intent. Harris v. Runnells, 12 How. 79 ; Smith v. Mawhood, 14 M. & W. 450. That the legislature-•did not intend any other effect to follow, where the note, not having the statutory words thereon, was received by an indorsee or purchaser with notice of its consideration, than if such words were placed thereon, is, we think, obvious from the language of the first section. After providing that such note or instrument, that is, a note or instrument having the words “ Given for .a patent right ” written or printed thereon, in the hands of any pnchaser or holder, shall be subject to the same defenses as in the hands of the original owner or holders, the act proceeds as follows : “ And any person who shall purchase or become the holder of any promissory note, or other negotiable instrument, knowing the same to have been given for the consideration aforesaid, •shall hold such note or other instrument subject to the same •defenses as in the hands of the original owner or holder, although the words‘ given for a patent right,’ shall not be written or printed thereon.” The word “ defenses ” in both of these clauses has the same meaning, and is limited to such matters of defense as grow out of the transaction in which the note or other negotiable instrument originated.
It follows, therefore, that the action of the district court in reversing the judgment of the common pleas was proper, unless counsel for the plaintiff in error is right in the claim that the ■effect of such erroneous instruction was obviated by the verdict of the jury upon the other issues. . The jury found “ the issues joined” for the defendant. This, doubtless,'means all the .issues, and hence, if there was any issue upon the trial of which no error intervened, the finding upon which will support the judgment, it is quite immaterial whether the court erred in its rulings touching the other issues or not. Sites v. Haverstick, 23 Ohio St. 626; Butler v. Kneeland, Id. 196; Union Central Life Ins. Co. v. Sutphin, 35 Ohio St. 360. While this rule is well settled, the fact is not to be overlooked that we are asked to reverse a judgment of reversal, and that in order to do this we must be satisfied that that judgment was clearly wrong. 'The court will not interfere and prevent a new trial already *390 ordered by an inferior reviewing tribunal, unless clearly satisfied that such trial ought not to have been granted.
The issue upon the trial of which it is alleged that no error intervened, is the one arising out of the allegations by the defendant below, that the note, to the knowledge of Wick Bros. & Co., was given for a worthless patent right, and was consequently void for want of consideration, and the denial of' these allegations upon the part of the plaintiffs. Under this issue the defendant below was required to show, in the first place, that the patent was of no value. It then became the-duty of the plaintiffs, in order to avoid the consequences resulting from a want of consideration in the note, to show that they purchased the note before due, in the usual course of trade, and for value, upon showing which, the burden shifted to the defendant, to establish the fact that the plaintiff received’ the note with notice of its infirmity. Davis v. Bartlett, 12 Ohio St. 534.
Evidence was offered upon these questions by both parties,, the pleadings agreeing upon the fact, that the amount paid by the plaintiffs for the note was $4,400, and upon the further fact that the note was purchased by the plaintiffs at the counter of' their bank, long before it was due. In view of the facts thus-admitted by the pleadings, the only question open to proof had respect to the validity of the patent, and if worthless,, notice of that fact by the plaintiffs, as well as of the fact that, an interest in the patent formed its consideration. The court charged the jury, that “ to bring the plaintiffs within the protection of the commercial rule,” before stated, “they must satisfy you affirmatively that they paid a fair and reasonable-value for the note, and [purchased the same] in the usual course-of trade.” And further, “If you find from the proof that $4,400 was much less than the fair and reasonable value of said note in the market of Youngstown, where the note was-made payable, and where the plaintiffs and defendant lived, and if you find that plaintiffs were acquainted with the defendant, his means and circumstances, and knew him to be perfectly good and' responsible, then plaintiffs would not be regarded as bona fide purchasers for a- fair and reasonable value in the- *391 usual course of business, in the commercial sense, and could not recover of defendant, unless Pool and Eorbes could recover. By this fair and reasonable value, which they must have paid for the note, I mean such sum as would not notify them that there was something wrong in the note.
“ What is meant by the usual course of trade ? It does not mean that plaintiffs must have been accustomed to buy notes like the one in controversy; but if they paid a fair and reasonable sum for the note as defined above and bought it before due, and if it does not appear that plaintiffs acted in bad faith in such purchase, then they did purchase in the usual course of trade. But if they did not pay a reasonable sum for the note, but if the sum was grossly inadequate, or if they did not, in buying, act in good faith, then you should find that they did not purchase in the usual course of trade.”
N ow, while it is very true, that the court said to the jury, by a somewhat unhappy use of language, that “ by fair and reasonable value,” he meant such “ as would not notify them,” the plaintiffs, “ that there was something wrong in the note,” he had just said to them, as a matter of law, that if the sum paid was less than the fair and reasonable value of the note in the place where the note was made, and where both plaintiffs and defendant lived, and if they, the plaintiffs, were acquainted with the fact that the defendant was perfectly good and responsible, then they could not be regarded as bona fide purchasers for a fair and reasonable value, and in the usual course' of business, and hence could not recover, unless the note was valid in the hands of the payee. This proposition in its length and breadth amounts to this: that no one, no matter how honestly he may act, can safely purchase negotiable paper, void in the hands of the payee, for a sum less than a jury would say was • its fair and reasonable value, if he knows that the maker is pecuniarily responsible. Or in other words, that the circumstance that the maker, to the knowledge of the purchaser, is abundantly able to pay his debts, when coupled with the fact that the paper is bought at a value much less than its actual worth, makes the purchase, as matter of law, mala fide. This, we think, is not the law. The circumstance that the note was *392 purchased at a value less than it was fairly worth, was in no otherwise important than as bearing upon the good faith of the purchase; and this was a question for the jury. Cromwell v. County of Sac, 96 U. S. 60 ; 2 Parsons on Notes & Bills, 428 ; 1 Daniel on Neg. Inst. § 777.
Again, the court gave the jury to understand that in order to a purchase of a note in the usual course of trade, it is both necessary that a reasonable sum should be paid therefor, and that the same should be purchased in good faith. This was a misconception of the meaning of that phrase. It is said, in 1 Daniel on Neg. Inst. & Prom. Notes, § 780, that the term “ usual course of trade,” “ is meant to describe a transfer according to the usages and customs of commercial transactions.” Without undertaking to define its exact scope or meaning, it is evident that a purchase of negotiable paper- by a bank at its counter for cash is receiving the paper in the usual course of trade, whether its fair or reasonable value was paid or not.
The remaining question involves the correctness of the instruction relating to the validity of the patent. After instructing the jury that the patent was not for any of the things, devices or functions, mentioned in the specifications therefor, but simply for the combination of all of them, and that if the machine made under the letters patent, and according to the claim therein, was substantially the same as other machines which had been in use before the claimed invention of Forbes, that the patent was of no value, the court added: “ So also it is of no value in preventing others from making and using other machines which would contain any less, or any greater number of parts, or a combination of the same number of parts, any one of which should substantially differ from any of the parts in the machine described in tlie letters patent, and therefore it would not constitute an exclusive or valuable monopoly, if other machines slightly variant in parts, or form or combination would produce the same result.
“ The Forbes patent, if not valid, or if worthless, would not be a sufficient consideration for the note in the hands-of the original parties to the note.”
We have encountered some difficulty in our endeavor -to *393 ascertain tlie exact meaning of this language. If it was designed to say, that, admitting the patent to be valid, it still was of no value, if other machines containing a less or a greater number of parts, or a combination of the same number of parts, if. any ■one of them differed substantially from any of the parts of the Eorbes patent, the charge was erroneous. If the patent is valid, any interest in it, without regard to the degree of its utility, or its pecuniary value, constitutes a sufficient consideration for a promissory note.
If capable of being applied to some practical or beneficial use, and is not frivolous or injurious to the well-being- or morals •of society, it is a valid patent, although other similar machines may be of greater utility. Lowell v. Lewis, 1 Mason, 182, 185; Bedford v. Hunt, Id. 303 ; Hash v. Lowell, 102 Mass. 60 ; Kneass v. Schuylkill Bank, 4 Wash. C. Ct. 12; Many v. Jagger, 1 Blatchf. 372. So, too, the charge was erroneous, if the court meant to say that the patent would be of no value, if ■other machines subsequently patented, or not patented a,t all, which were slightly, but not substantially variant in parts, form or combination, would produce the same result.
In Water Meter Co. v. Desper, 101 U. S. 335, it was said to be “ a well-lcnown doctrine of patent law, that the claim of a combination is not ■ infringed if any of the material parts of the combination are omitted. It is equally well known that if .any of the parts is only formally omitted, and is supplied by a mechanical equivalent, performing the same office and producing the same results, the patent is infringed.” See also Planing Machine Co. v. Keith, Id. 479, and Buck v. Hermance, 1 Black, 398. Without pursuing the question further, it is ¡sufficient to say, the judgment of the court of common pleas having been reversed by the district court, that we are not convinced that the error appearing on the record did not justify such reversal.

Judgment affirmed.