JAMES CALKINS, et al., Appellants, *v.* JAMES M. SMITH, Respondent.

Where one member of a partnership, in order to pay his individual debt, makes his promissory note and indorses it in the firm name, without the knowledge or consent of his copartners, and the creditor with knowledge of the facts receives the note, and in order to bind the firm transfers it before maturity to a *bona fide* holder, the creditor is guilty of a fraud and is liable therefor. But the fraud is not upon the firm; it is only upon those who did not consent to the indorsement. The cause of action arising therefrom is no part of the assets of the firm, although the note has been paid out of such assets, and title thereto does not pass by a general assignment of all the property and effects of the firm, nor is any interest therein conveyed by an assignment made by one of the parties injured of his right and interest in the partnership assets. (LOTT, Ch. C., and GRAY, C., dissenting.)

Such a fraud does not work a joint injury for which the injured partners can unite in a common-law action. The damage sustained by each is in proportion to his interest in the partnership, and he must bring a separate suit to recover it. (EARL, C.)

Where in an action brought by two plaintiffs, they fail to establish a joint interest, but a separate cause of action in favor of one of the plaintiffs is established, the court has power, under § 274 of the Code, to give judgment in favor of the one and against the other, but it is not bound so to do, and a judgment against both is not erroneous.

(Argued January 10, 1872; decided May term, 1872.)

APPEAL from the judgment of the General Term of the Supreme Court in the eighth judicial district, affirming a judgment in favor of defendant, entered upon the decision of the

court upon trial at circuit without a jury. The alleged cause of action arises out of the following facts :

On the nineteenth day of April, 1861, Charles W. Grannis, James Calkins, Gustavus A. Scroggs and Rollin Germain formed a copartnership, under the name of Germain & Co.

On the twenty-fourth day of May, 1862, Rollin Germain made two promissory notes, bearing date on that day, payable to the order of Germain & Co., one for $304.90, and the other for $101. Both of these notes were, in the presence of the defendant, indorsed by Mr. Germain with the firm name of Germain & Co. The former note was then delivered to the defendant, as the administrator of the estate of Solomon G. Haven, to pay a debt which Mr. Germain owed that estate, and the other note was delivered by Mr. Germain to the defendant, as the executor of the will of Ira A. Blossom, to pay a debt which Mr. Germain owed the estate of Mr. Blossom.

Both of these notes were given and indorsed without the knowledge, authority or consent of any other member of the firm of Germain & Co., but Mr. Germain, " when he indorsed and delivered the notes to the defendant, represented to him that he was authorized to indorse them in the firm name, and that the firm was owing him money with which he expected to pay the notes."

The defendant, before the maturity of the notes, indorsed and negotiated them to the New York and Erie Bank, with intent to charge the firm. The bank discounted the notes in the ordinary course of business, before maturity, and paid the proceeds to the defendant.

The defendant, before the commencement of this action, paid the amount realized by him on the notes to the estates of Messrs. Haven and Blossom respectively, in payment of Mr. Germain's debts to those estates.

In September, 1862, the plaintiff, James Calkins, commenced an action in the Superior Court of Buffalo to dissolve the copartnership of Germain & Co., and close up its affairs.

A receiver was appointed in that action. The two notes of Mr. Germain, indorsed by him in the firm name of Germain & Co., were presented to the receiver. By order of the court they were paid out of the proceeds of the assets of the firm.

· On the sixth day of June, 1863, Charles W. Grannis assigned his interest in the property of the firm of Germain & Co. to the plaintiff Henry W. Grannis.

On the seventh day of January, 1863, Messrs. Germain and Scroggs entered into a written agreement with the plaintiffs and Charles W. Grannis, by which they, among other things, assigned over to the plaintiffs their interest in the property and effects of the firm of Germain & Co.

On the third day of June, 1863, the receiver, under the order of the court, assigned to the plaintiffs the assets of the firm of Germain & Co. remaining in his hands.

The court, on these facts, decided the plaintiffs were not entitled to recover, and directed judgment for the defendant. Judgment was entered accordingly.

*C. C. Torrance* for the appellants. The indorsement of the firm name by Germain, for the payment of his own debt, was a fraud upon the firm. (*Livingston* v. *Roosevelt*, 4 John. R., 251, 278, 289, and cases there cited ;. *Boyd* v. *Plumb*, 7 Wend. R., 309.) The defendant was not a *bona fide* holder for value, and the indorsement was without value in his hands. (*Dobb* v. *Halsey*, 16 John. R., 34, 38; *Gansevoort* v. *Williams et al.*, 14 Wend. R., 133; *Williams* v. *Walbridge*, 3 id., 415; *Bank of Rochester* v. *Brown*, 7 id., 158; 1 John. R., 529; *Bank of Vergennes* v. *Cameron*, 7 Barb., 143; *Exchange Bank* v. *Monteath*, 24 id., 371; *Austin* v. *Vandermark*, 4 Hill, 259; 18 Wend., 478.) But the notes and indorsements having been transferred before due to the New York and Erie Bank, who were *bona fide* holders for value, the bank could recover against the firm upon the indorsements. (*Wells* v. *Evans*, 20 Wend., 251; 2 id., 324; *Livingston* v. *Roosevelt*, 4 John. R., 279; *Boyd* v. *Plumb*, 7 Wend. R., 310; *Austin* v. *Vandermark*,

4 Hill, 259.) This was a fraud upon the firm, whether defendant so intended or not. (*Decker* v. *Mathews*, 2 Ker., 319; *Livingston* v. *Roosevelt*, 4 John., 251, 272; 4 Taunt., 799; *Boyd* v. *Plumb*, 7 Wend. R., 309; *Gansevoort* v. *Williams*, 14 id., 133, 138; 1 Edon on Injunctions, 172, 210; *Hood* v. *Ashton*, 1 Russ., 412; *Newman* v. *Milner*, 2 Ves., Jr., 483.) Defendant cannot escape liability on the ground that he is acting as administrator and excecutor. (*Hecker* v. *De Groot*, 15 How. Pr. R., 314; Story on Agency, §§ 308–311.)

*John Ganson* for the respondent. The firm could not maintain an action against a third party to recover damages for the injury the firm sustained by a wrong committed by one of its members. (*Jones* v. *Yates*, 9 Barn. & Cress., 537; 17 Eng. Com. Law, 436; *Sparrow* v. *Chisman*, 9 Barn. & Cress., 241; *Wallace* v. *Kelsall*, 7 Mees. & Wels., 264; *General Mutual Insurance Company* v. *Sherwood*, 14 How. U. S. R., 351, 364; *Mathews* v. *The Howard Insurance Company*, 1 Kernan, 9, 17, 18.) The facts found do not state that the defendant was guilty of any fraud, and this court cannot infer fraud from any facts found. (*Oberlander* v. *Spiess*, decided in Court of Appeals January 26, 1871; *Meyer* v. *Amidon*, decided in Court of Appeals March 21, 1871.) The court, from the evidence given, will presume in favor of the judgment rendered, that the defendant was not guilty of any fraud. (*Carman* v. *Pultz*, 21 N. Y. R., 574; *Grant* v. *Morse*, 22 id., 323; *Phelps* v. *McDonald*, 26 id., 82; *Milhan* v. *Sharp*, 27 id., 624; *Smith & Coe*, 29 id., 666; *Brainard* v. *Dunning*, 30 id., 211.) In such a case as this the remedy must be sought in equity in an action against both offenders. (*Jones* v. *Yates*, 9 Barn. & Cress., 532; 17 Eng. Com. Law, 438; *Horner* v. *Wood*, 11 Cush., 62.) Plaintiffs had the right to call upon Germain to pay the note and have suffered no damages. The law presumes Germain solvent. (*Potter* v. *Merchants' Bank*, 27 N. Y. R., 641, 655; *Walrod* v. *Ball*, 9 Bar., 271.)

EARL, C.    I propose to consider in this case but one question, which I regard as decisive of this appeal.    When Germain indorsed the name of Germain & Co. upon the notes, without the knowledge or consent of his copartners, to pay his private debt, he undoubtedly committed a fraud upon them ; and if the defendant aided in this fraud by transferring the notes to a *bona fide* holder, who could enforce them against all members of the firm, he was also guilty of a fraud, and liable to the copartners of Germain for all the damage he occasioned to them.    But the fraud was not upon the firm. It was upon the three partners who did not consent to the indorsement.    Germain, who made the indorsement, was not defrauded, and the firm could not have sued to recover damages for the fraud.

I am inclined to think that the fraud was not a joint fraud for which the three partners could unite in a common-law action.    But it was a fraud upon each partner separately, for which he could sue alone to recover the damage which he sustained.    The damage sustained by each partner was not the same, but was in proportion to his interest in the partnership.    This is a common-law action for fraud, in which the plaintiffs base their right to recover upon a cause of action for fraud assigned to and jointly held by them.    Plaintiffs' counsel, upon the argument before us, claimed that " plaintiffs took their title to this demand through the assignment from the receiver."    But it passes my comprehension how they could get title to the cause of action from that source, as Tifft was appointed receiver only of the assets of the firm. This cause of action was no part of the assets of the firm, was never vested in Tifft, and he could not therefore transfer any title thereto to the plaintiffs.    And the plaintiffs did not get any interest in the cause of action by virtue of the assignment to them from Scroggs and Germain, contained in the agreement of January 7, 1863.    This is so, aside from any other reason that might be assigned, because they only assigned " all their right, title and interest in and to the property and effects of said firm of Germain & Co., and the choses in action of

said firm of every nature and description whatever." This assignment did not cover this cause of action.

For the same reason the plaintiff, Henry W. Grannis, did not get any interest in this cause of action by the assignment to him from Charles W. Grannis, dated June 6th, 1863, because that was an assignment only of the assignee's interest in the assets and property of the firm.

The sale of the assets of the firm to the plaintiffs could not, in any way, vest them with this cause of action for the alleged fraud. It is true that the fraud diminished the assets, but it was perpetrated months before the sale. It was not a fraud upon Henry W. Grannis, but upon the three partners of Germain. The plaintiffs took the assets as they were when they bought them. The fact that they had been diminished by a prior fraud, in no way connected with the sale to them, gives them no cause of action. The defendant had nothing to do with the sale of the assets, and the fact that he may have committed a fraud affecting the value of the assets upon the prior clause cannot make him liable to the plaintiffs.

Hence it is quite clear that Henry W. Grannis had no title to or interest in the cause of action, and that the plaintiffs have not, therefore, any joint interest in the cause of action which enables them to maintain this action.

If the alleged fraud was committed, it gave a cause of action to the plaintiff Calkins to the extent of his injury as one of the partners, which he could have prosecuted alone against the defendant, and probably the court had the *power* in this action, if the claim had been made, to have awarded to Calkins his damages in this action, giving judgment against the other plaintiffs under section 274 of the Code. But the court was not *bound* to do this, and committed no error in defeating the plaintiffs because they did not establish a cause of action in which both were interested. But the claim that Calkins had a separate cause of action for the fraud upon him was not put forth in the complaint, nor made upon the trial, nor upon the argument before us; and hence, even if we

should decide that, upon all the facts appearing in the case, he had a separate cause of action, it would not be proper for us, upon that ground, to reverse the judgment below.

The judgment, therefore, should be affirmed, with costs.

GRAY, C. (dissenting). The facts admitted by the pleadings and those found by the judge should be considered together; the former are conclusive, because the parties themselves best know what the facts are, and the latter can only be questioned in this court when there is not sufficient evidence upon which to rest the finding; the fact that the persons named in the complaint constituted the firm of Germain & Co., not being denied in the answer, is conceded; the complaint then states that Rollin Germain, one of that firm, made his individual notes, and without the knowledge or consent of the firm or either of its members, and in the presence of the defendant indorsed upon them the firm name of Germain & Co. and delivered them to the defendant, for the purpose of discharging an individual liability of Rollin Germain to the defendant, all of which was well known to the defendant at the time of his receiving the notes and indorsements. These facts, thus stated, are in no respect denied by the answer, except the single allegation that the notes were made, indorsed or delivered to pay an individual liability of Rollin *to the defendant.* This negotiation leaves the answer "pregnant with the admission" that the notes were made by Rollin, who, without the knowledge or consent of the firm or either of its members, and in the presence of the defendant indorsed upon them the firm name for the purpose of discharging an individual liability of Rollin Germain. (The denial that it was a liability to the defendant, is, at best, but technically accurate, the fact being that the notes were made, indorsed and delivered to the defendant for the purpose of discharging an individual liability to him, in the one case as executor and in the other as administrator.) After the allegations thus admitted, the plaintiffs proceed by stating that, before the notes became due and payable, the defendant, with intent to injure

and defraud Germain & Co., and to make the firm liable upon such indorsements, and with intent that they should be enforced against and collected of the firm, did, for a valuable consideration, transfer them to the New York and Erie Bank. The answer admits that for a valuable consideration the defendant indorsed and transferred the notes, before their maturity, to this bank, and does not deny that he did transfer them with intent that they should be enforced against and collected of the firm, but denies that he made the transfer with intent to injure the firm ; what less than an intent to injure is established by his admission that he transferred them to an innocent party, with intent that they should be enforced against and collected of the firm (*Cunningham* v. *Freeborn*, 11 Wend., 241, 253) ; or by the finding, " that he did indorse the notes to the bank *to put them in a shape* where the other parties could not defend against the indorsements ? He knew that the legal effect of what he thus did would be to injure the firm, and that he was successful in accomplishing his object is established by the finding that, upon due proof of the indorsement and protest of the notes, the receiver of the assets of the firm, in pursuance of an order of the Superior Court of Buffalo, made in the month of March, 1863, paid the bank, out of such assets, the full amount of the notes ; and thus it is established, by the admissions of the defendant and the findings of the judge, that the firm have been injured to the amount which the receiver has paid out of its assets. And by whom injured ? Not by Rollin alone, who fraudulently placed upon the notes the firm name ; but by the defendant, who not only concurred in the wrong (*Gansevoort* v. *Williams*, 14 Wend., 134, 138), but consummated the injury by putting the notes, as the judge finds, " in a shape where the other partners could not defend against the indorsements." It is not alleged in the answer that the defendant received the notes thus indorsed, relying upon the truth of any statement made by Rollin as to his authority to indorse upon them the name of the firm. That issue was not properly in the case ; it was, nevertheless, made on the trial, and

that part of it which related to the defendant's reliance upon the truth of what Rollin said was sharply contested, and the judge did not find either way upon it, but did find what was some evidence of the fact, viz.: that when Rollin indorsed the notes he represented to the defendant that he was authorized so to do, and omitted to find the only contested fact, to wit, that the defendant, relying upon the truth of such representations, received the notes. Without considering whether, if he had thus found, it would amount to a defense, it is sufficient to say that the finding comes short of establishing the defendant's good faith in accepting the notes thus indorsed, but, as a whole, substantially finds the reverse. It is objected that the plaintiffs are not the owners of the cause of action, but portions of it belong to other members of the late firm of Germain & Co. The complaint states, and the answer does not deny, and therefore concedes, that in September, 1862, George W. Tifft was, by the Superior Court of Buffalo, appointed receiver of the effects of the firm of Germain & Co.; that as such he became possessed of all the property and effects of the firm. It is then found, as a fact in the case, that on 23d April, 1863, pursuant to the order of the court conferring upon him his receivership, he paid the bank the full amount of the notes, which, as the judge elsewhere found, the defendant had indorsed to the bank " to put them in a shape where the other parties could not defend against the indorsement;" it was not until this payment that the cause of action against the defendant became complete, and, by its payment out of the assets of the firm, it became, for the benefit of the creditors of the firm, the property of the receiver, which, like any other asset of the firm, he had the right, under the order of the court, to sell and assign to whomsoever the court should direct, and the assignee would, as the plaintiffs did in this case, become vested, for their own benefit, of the entire interest which Tifft had for the benefit of the creditors of the firm. The answer alleges that these indorsements were paid in pursuance of an agreement between the parties. The evidence

and finding is, that the payment was made in pursuance of the order of the court. It may be that the order was predicated upon the agreement, but it is not so found, nor is there, in the case, any evidence of it. Whether, if it was a fact, it should change the result is not a question for our consideration, nor was there a finding, or evidence to support one, that the debts of Germain & Co. were, before the assignment to the plaintiffs, or since, paid. The inference is almost, if not quite, irresistible that they were not paid before the assignment. If they had been, the court, unless imposed upon, would not have ordered it to be made. To the question as to the release of Rollin Germain under the agreement of the 7th of January, 1863, there are at least two answers; one is that the liability of the defendant, contingent or complete, belonged to the receiver for the benefit of the creditors of the firm, and, hence, that the firm could not, by discharging Rollin, if in their power then to do so, impair the liability of the defendant; that the receiver only could do that properly without the concurrence of the court. The other is that, on the 7th of January, 1863, the debt which Rollin incurred to the firm of Germain & Co. did not exist; it was not incurred until after the payment, under the order of the subsequent March, of his unauthorized indorsement. There is nothing in the pleadings or findings showing that Charles W. Grannis had any interest in the partnership property not vested in the receiver, or why he assigned to the plaintiffs all his interest in the property and assets of the firm of Germain & Co.; but upon looking into the evidence it will be seen that, on the 14th of June, 1862, short of a month after the making and indorsement of the note for $304.90, and over a month prior to the making and indorsement of the note for $101, Charles assigned to Henry his interest in the business of the firm of Germain & Co., without making any apparent change in the business of the company, Henry appearing there only as a subordinate; what effect the taking, holding and disposing of the firm property by the receiver, without an assertion of any

interest in it by Henry, who seems to have been a dormant partner with knowledge of the acts of the receiver, may now be out of place to discuss; it is enough for the purpose of determining whether or not the judgment should be reversed, that Charles had no possible interest in the liability of Rollin, growing out of his indorsement of the note for $304.90 not vested in the receiver. These views lead me to the conclusion that the judgment should be reversed and a new trial ordered.

For affirmance, EARL, HUNT and LEONARD, CC.

For reversal, LOTT, Ch. C., and GRAY, C.

Judgment affirmed.