CASE 72—PETITION ORDINARY—JANUARY 12.

# Boughner v. Black's Adm'r.

APPEAL FROM KENTON CHANCERY COURT.

1. WHERE INJURY TO THE BUSINESS OF A FIRM RESULTS from the dishonest practices of one of the partners, the other members of the firm may have an action against him for damages.

   In this action upon a note executed for the purchase price of an interest in a partnership, the defendant is allowed to plead as a counter-claim damages resulting to the business of the firm from the dishonest conduct of the payee of the note, plaintiff's assignor, who continued to be a partner.

2. PLEADING—OBJECTION TOO LATE.—After an issue has been formed upon the general averments of a petition or counter-claim, and a verdict or judgment rendered, it is too late to object that the pleading should have been more specific.

WM. LINDSAY FOR APPELLANT.

1. One partner can not have an action against another for damages, because the defendant has so conducted himself in the management of the partnership business as to bring the good name of the firm into disrepute, and thereby to destroy its good will. Such damages are too remote to be made the basis of an action at law.

2. The defendant's pleading is fatally defective in that it does not allege the value of the good will of the partnership, or that it was of any value. It is further defective in that it states mere conclusions and not facts.

T. F. HALLAM ON SAME SIDE.

1. The defendant's claim for damages is not good as a counter-claim, the injury to the thing sold being subsequent to the sale, and not a part of the same transaction.

2. Neither law nor equity ever heard of a suit for damages by partner against co-partner on account of conduct whereby the partnership business has been lessened. The conduct of defendant's assignor may be without palliation, but there is no law for his case different from that for other persons.

O'HARA AND BRYAN FOR APPELLEE.

The "good will" of the firm having been destroyed by the conduct of plaintiff's assignor, the consideration for the purchase of the good will has entirely failed, and, therefore, defendant can not be required to pay any part of that consideration.

.JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

In the year 1873 the appellant, Boughner, Holmes & Chalfant, were engaged in the business of selling tobacco at one of the warehouses in Cincinnati, and on the first day of April of that year the appellee, Black, purchased of Boughner & Holmes an interest of one-sixth in the property and assets of the firm for the sum of five thousand five hundred and thirty-one dollars and seventy-three cents, and at the same time purchased an interest in the *good will* of the firm, for which he agreed to pay two thousand five hundred dollars, and all his profits on his share for one year exceeding two thousand five hundred dollars.

Boughner assigned his interest in these notes to his brother William, who instituted a suit at law against Black, seeking to recover the amount to which his brother was entitled, and making his co-partners defendants as well as the obligor Black.

The appellee Black made several defenses to the notes. He alleges that the larger note was procured by the fraudulent misrepresentations of the appellant as to the value and extent of the assets; further, that by the fraudulent acts of the appellant in conducting the business of the firm, that were unknown to all the partners, both before and after the date of his purchase, the patrons of the firm refused to sell tobacco at their warehouse, and the buyers to make purchases at their auction sales; in fact, it is alleged that the business of the firm was entirely destroyed. The appellee claims damages to an amount exceeding the sum claimed by

the appellant, and on the final hearing the appellant obtained a judgment for three hundred and fifteen dollars.

It is maintained by the appellant that the statements found in the answer and counter-claim of the appellee are but legal conclusions, and no substantial fact alleged requiring a reply or constituting a defense.

There was no demurrer to the answer, and the case was transferred to a court of equity without objection.

After admitting the execution of the notes and the consideration upon which they were based, and the large business done and profits realized by the firm, it is alleged "that at and before the date of the purchase of said good will the said Boughner and a certain L. F. Anderson, who was then and had been for some time in the service of the firm, were, unknown to the defendant, carrying on certain fraudulent transactions in the name of fictitious parties, in which they cheated and defrauded the customers and partners of said firm by fraudulently and surreptitiously changing the marks and brands upon the packages containing tobacco intrusted to said firm for sale, and making false and fraudulent entries of sales of said tobacco, and making false and fraudulent reports and accounts of sales of said tobacco to the owners thereof, and that said false and fraudulent practices were continued after the sale to the appellee without his knowledge or consent. That his frauds were discovered, and the reputation of the firm and the good will was entirely

destroyed and rendered wholly valueless to the defendant, and said firm rendered unable to do any business at their warehouse for a long time, etc.

That this answer should have been more specific in its averments is unquestioned; but the appellant, instead of requiring the appellee to cure the defect either by motion or otherwise, filed a reply to the answer, in which each and every allegation of fraud is denied, and the case referred to the commissioner for proof upon the issues made.

It is too late, after an issue is formed upon such general averments, and a verdict or judgment rendered, to raise the question for the first time that the charges should have been more specific. The attention of the appellant was called to the nature of the defense, that if defective was only the subject of special demurrer, that could have been made the foundation for a rule against the pleader to make his statements more certain that an answer might be filed.

The fraud practiced by Boughner and the principal clerk in the warehouse is clearly shown. They were engaged not only in selling the tobacco for their customers, which was the legitimate business of the firm, but they were also engaged in purchasing the tobacco sent them for sale under the fictitious name of E. G. Prime. When there was tobacco on the brakes that sold for more than the tobacco they had purchased, they would substitute one of their own hogsheads of an inferior quality for the good tobacco, changing the numbers and the hogsheads, and were practicing a system of frauds upon their

customers that, when discovered, destroyed the business of the firm, and must have caused great pecuniary loss. This house was known as the Planters' Warehouse, and the other warehouses, in order to preserve the integrity of the trade in that city, caused the doors of the house to be closed, and the buyers refused longer to have business transactions with the firm, while all the partners but Boughner seem to have retained the confidence of the trade, and were men of a high order of integrity; but his conduct wrecked the firm in a financial and business point of view.

The fraud of the partner, who is asserting his right to recover the amount of these notes to the extent of his interest, being clearly established, it is urged by counsel that the damages to the good will of the firm are too remote to be made the basis of an action. It is conceded that a dissolution of the firm may be had, and the partner in default made liable for money or property actually lost by his dishonesty, and for any moneys the firm may have been compelled to pay on account of the fraud, but that no action for damages against the partner, resulting in an injury to the business of the firm by reason of his dishonest conduct can be maintained.

The attention of the court has not been called to any authority bearing on this question by counsel on either side, still it seems to us that the mere fact of the appellee being a partner with the appellant in the business in which this fraud was practiced will not prevent such a defense as is relied on to defeat the recovery in this case. Both notes were

executed for an interest in the partnership, and that interest has been made worthless by the fraudulent conduct of the partner making the sale, and who is now seeking through his assignee to recover the purchase money. That a partner can be made liable to his co-partner for an error of judgment in the conduct of the partnership business, or because his management or control of the business has resulted in loss, is not contended for by counsel of the appellee, nor is it a question involved in this case.

The fraud of the partner in selling out an interest in the partnership that was seemingly prosperous at and before the sale, and would have so continued but for the hidden frauds that were being then and after the sale practiced by him on his patrons, is offered as a defense to the recovery of the purchase money notes by the vendee, who knew nothing of the fraud, that, when developed, resulted in the financial ruin of the firm and the total destruction of its business. Scarcely an effort has been made to disprove the fraudulent conduct of Boughner, and if no precedent can be found where such a defense has been successfully interposed, it is not too late to establish one, making the party practicing the fraud responsible in damages for the wrong, although it may originate from or be connected with a partnership transaction.

The consideration money from the one to the other in this case has failed, and if not wholly lost, the incoming partner, who has been seduced in making his purchase without any knowledge or means of knowing the fraud that was being practiced, that

must necessarily result in the ruin of the firm, should not be compelled to pay to the extent of the consideration received, if the damages sustained exceed the amount he agreed to pay.

Mr. Lindley, in his work on Partnership, says:

"If a person receives a premium for taking another into partnership, which is to endure for a certain time, and then himself does any thing which determines the partnership before that time has elapsed, he may be fairly considered as having precluded. himself from insisting on his strict right to retain. or be paid his whole premium." (vol. 1, page 73.)

The doctrine of the text applies to a case where there is no fraud or misconduct on the part of the partner selling an interest, and certainly where such. fraud has been practiced as is developed here, the party injured must have a remedy.

"If a person has been deluded into becoming a. partner by false and fraudulent representations, and. has paid a premium, he may take one of two courses, viz. either abide by the contract, and claim compensation for the loss occasioned by the fraud, which he may do in taking the partnership accounts, or he may disaffirm the contract, and entitle himself to the whole of the money he has paid." (Lindley on Partnership, vol. 1, page 72.)

In this case the partnership is asked to be settled, and a report of settlement made by the commissioner.

The appellant was entitled to only one-half of the proceeds of the two notes by the terms of his sale. The appellee paid off the purchase money note, executed for the *good will* of the firm, and his damages,,

by reason of the fraudulent conduct of the co-partner, greatly exceed the amount which appellee might be owing upon a settlement of the partnership accounts.

In the year ending in January, 1874, the house had sold seven or eight thousand hogsheads of tobacco, and was prosperous in its business, having through its agents worked up an excellent trade in the States of Ohio and Kentucky. Their agents declined to send tobacco to their warehouse when the fraud was developed, and the buyers began to make reclamations in money by reason of the fraudulent conduct of Boughner. Their trade extended to all the tobacco districts in both Kentucky and Ohio contiguous to Cincinnati, all of which was lost by the firm ceasing to do business, and the expulsion of Boughner from the tobacco association. The fact that the other partners resumed business in a short time did not lessen the damages sustained. They had to build up a new trade, and give to the house a reputation for commercial integrity of which it had been deprived by the gross frauds of Boughner, before it could compete with similar warehouses in the city.

Without discussing or determining the question raised as to the representations alleged to have been made by Boughner as to the value of the assets at the time of the sale to the appellee, we are satisfied the damages resulting to him directly from the conduct and acts of Boughner will more than exceed the interest of the latter in the notes in controversy.

The judgment below is therefore affirmed.