LESTER et al. v. HAWKINS. (No. 833.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 27, 1915. Rehearing Denied Jan. 5, 1916.)

1. PARTNERSHIP ⊜⇒191—INJURY TO PARTNERSHIP PROPERTY BY MEMBER OF FIRM — RIGHT OF ACTION.

Where sheep owned by a partnership were seized on a writ of sequestration issued by the president of the bank which held a mortgage on them, who was also a member of the firm owning them, and such sheep were damaged by reason of their being negligently handled by the officer at the direction of the bank president, his partner could recover against the bank for expenditures made necessary thereby.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 349–353; Dec. Dig. ⊜⇒191.]

2. APPEAL AND ERROR ⊜⇒742—ASSIGNMENT OF ERROR.

On defendants' appeal in an action against a bank and its president, the first proposition under an assignment of error, reading, "The fact that the affidavit may have been untrue could not make * * * appellant bank liable in view of the provisions of its mortgage," did not confine the assignment to the bank only, and waive it as to its codefendant, its president, since the submission of propositions under an assignment does not waive all points not covered thereby.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. ⊜⇒742.]

3. BANKS AND BANKING ⊜⇒105—AUTHORITY OF PRESIDENT—CONTRACTS—DEALINGS ADVERSE TO BANK.

Where the president of a bank, member of a partnership owning sheep upon which the bank held a mortgage, agreed with his partner that, if the latter would ship certain sheep to the market, and apply the proceeds of the sale to the payment of a firm note due the vendor, who had a mortgage on the sheep prior to that of the bank, the partner could withdraw the same number of sheep from the partnership in substitution, that the bank would release its mortgage as to such sheep, and that he himself would release his interest therein, such agreement was not binding upon the bank in the absence of special authority.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 249–252; Dec. Dig. ⊜⇒105.]

4. SEQUESTRATION ⊜⇒21 — WRONGFUL SEQUESTRATION—RIGHT OF ACTION.

Where a bank held a mortgage on sheep, neither the bank nor its president could be charged with actual damages on account of the president's improper affidavit to secure issuance and levy of a writ of sequestration, since the bank had a right to the writ.

[Ed. Note.—For other cases, see Sequestration, Cent. Dig. §§ 50–54; Dec. Dig. ⊜⇒21.]

5. SEQUESTRATION ⊜⇒21 — WRONGFUL SEQUESTRATION—RIGHT OF ACTION.

Where the president of a bank holding a mortgage on sheep, in pursuance of a writ of sequestration, the issuance of which was authorized by the bank, provided an inadequate. pasture for the sheep, and directed the sheriff to use such pasture, the bank and the president were liable for damages to the sheep occasioned thereby.

[Ed. Note.—For other cases, see Sequestration, Cent. Dig. §§ 50–54; Dec. Dig. ⊜⇒21.]

6. DAMAGES ⊜⇒87 — EXEMPLARY DAMAGES — SUPPORT BY ACTUAL DAMAGE.

In an action against a bank and its president for the wrongful sequestration of sheep under a mortgage thereon held by the bank, where the award of actual damages was for the expenditure by the owner made necessary by the negligent handling of the sheep under the direction of the president, an award of exemplary damages, based on the president's making the affidavit for sequestration without probable cause, was improper as a finding of exemplary damages without actual damages occasioned by the same wrong to sustain them.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 188–192; Dec. Dig. ⊜⇒87.]

7. BANKS AND BANKING ⊜⇒112 — TORT OF PRESIDENT — LIABILITY OF BANK FOR EXEMPLARY DAMAGES.

To render a bank liable for exemplary damages resulting from acts of its president, authorized to bring suit and make affidavit for sequestration of property on which the bank held a mortgage, other than his so doing, the bank must have authorized or consciously approved his act, since the principal is not liable in punitory damages for the torts of its agent, unless it authorized the same, or, with knowledge of the wrong committed and its nature, adopted or ratified it.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 271, 272; Dec. Dig. ⊜⇒112.]

8. SEQUESTRATION ⊜⇒21 — WRONGFUL SEQUESTRATION—MEASURE OF DAMAGES.

In an action by the owner of sheep for damages to the animals seized under an illegally issued and levied writ of sequestration, the money expended by such owner in caring for the sheep was a proper measure of damages.

[Ed. Note.—For other cases, see Sequestration, Cent. Dig. §§ 50–54; Dec. Dig. ⊜⇒21.]

9. SEQUESTRATION ⊜⇒21 — WRONGFUL SEQUESTRATION—DAMAGES.

In an action by an owner of sheep for damages to the animals when seized under an illegally issued and levied writ of sequestration, the value of lambs which would have been born but for the ill treatment of the ewes in getting insufficient pasturage was not a proper element of damages, as too remote.

[Ed. Note.—For other cases, see Sequestration, Cent. Dig. §§ 50–54; Dec. Dig. ⊜⇒21.]

Appeal from District Court, Deaf Smith County; M. J. R. Jackson, Special Judge.

Action by H. H. Hawkins against L. T. Lester and another. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

C. D. Wright, of Hereford, and Turner & Rollins, of Amarillo, for appellants. Gilliland & Estes, of Hereford, for appellee.

HENDRICKS, J. [1] The appellee, Hawkins, sued the First National Bank of Canyon, Tex., and L. T. Lester, who is the president

---

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of said bank, to recover actual and exemplary damages, alleging the illegal issuance and levy of a writ of sequestration on certain sheep, and also alleging negligence on the part of the officer while the sheep were in his custody, asserting that the appellants directed the officer to handle the sheep in the negligent manner alleged. At the threshold of the case the appellants assign a preliminary question of partnership going to the foundation of the action, asserting that Lester, one of the codefendants, and Hawkins, the appellee, were partners in the sheep, and that Hawkins individually maintained the action for the entire damages. The appellants raised this question in the trial court by plea in abatement after the original petition (before amendment) had been filed, and appellee attempts to answer the whole question by asserting that on account of the delay in filing the plea it was waived.

Justice Brown said in the case of Waggoner v. Snody, 98 Tex. 516, 85 S. W. 1134:

"Where a joint owner of personal property brings a suit for damages thereto without joining the other owner or owners, he cannot recover the whole value of the property or the damages which may have been inflicted upon it, but will be entitled to recover only his proportionate part of such value or damages, notwithstanding defendant has not pleaded the nonjoinder in abatement."

While the case cited is not exactly the same, from the logic of that case, however, we conclude that the question insisted upon by appellant could be raised by appellants. However, would the rule attempted to be invoked by appellants apply to the facts of this case? Lester, the plaintiff's co-owner in the sheep, was the president of the bank, and as the representative of the bank caused the issuance and levy of the sequestration. The only actual damages that the jury found was the sum of $482.40, representing an expenditure of money upon the part of the plaintiff necessary in caring for the sheep as the proximate result of defendant's negligence.

The question arises: Where a principal and his agent commit a trespass or a tort upon partnership property, and the partner in possession of the property, for the purpose of preserving and relieving the property from damage, and protecting the same, as a result of the trespass, expends individual money, can he recover the same where the agent acting for the principal is a partner? Of course, the general rule is that one partner cannot sue others for the wrongful conversion of partnership property, or for a tort committed by others upon partnership property, for the reason that the recovery is a partnership fund; but, where one partner expends his own money for the protection or preservation of property, though the property itself may belong to the partnership, and the expenditure is brought about by the wrongful act of the other partner, acting with or for a third person, should the general rule prevail? And should the individual partner suing for the damages have to show in that character of case, by any rule of proportion, a severable interest in order that the litigation could be maintained? Story on Partnership, § 256, says:

"* * * If a third person should fraudulently collude with one partner to injure the others, even though the act might in other respects be an injury to the partnership, yet an action will lie by the other partners alone against such third persons so colluding for the special damages occasioned thereby to themselves."

The English case of Longman v. Pole, 1 Moo. & Malk. 223, cited by Story to sustain the doctrine, is not accessible to us, but the following cases, also cited, bear upon the principle: Calkins v. Smith, 48 N. Y. 614, 8 Am. Rep. 575; Fuller v. Percival, 126 Mass. 383; Duffy v. Gray, 52 Mo. 528.

Bates on Partnership, vol. 2, § 895, says:

"If a partner, by an act outside of his authority, creates against his copartners a liability which he would not have called them to share, they may recover from him the amount they have paid. Thus, if a partner makes a note in the firm name for his private purposes, and the firm is compelled to pay it, the innocent partners can recover from him. So, if by the fraud of one partner, partnership property is condemned, or the firm is rendered liable to a third person for a loss to him, the rest can recover against the guilty partner."

The case of Fuller v. Percival (Mass.) supra, was one where a partner fraudulently executed a promissory note in the name of the firm and delivered it to another, who had knowledge of the fraud, but he in turn delivered it to an innocent holder. The firm was dissolved, and a receiver appointed. The innocent holder brought an action at law upon the note, and the defrauded member of the firm then brought a bill in equity against the partner and his confederate to compel them to take up and cancel the note, but it was held that the bill could not be maintained, for the reasons stated in the opinion; but the court said as to another phase:

"The plaintiff cannot escape his liability to the holders of the note. Upon the payment of the note he may at once commence action at law in his own name alone to recover for the fraud alleged to have been practiced upon him, and in that action his remedy is full, adequate, and complete against the parties to the fraud" —also citing the English case of Longman v. Pole, supra.

If one partner has to pay money individually as the result of an injury perpetrated by a third person and another partner, and this money is recovered from the third person, what possible interest could the partner participating in the tort have in the damages recovered? If this partner should sue the other partner direct for the damages for a personal reimbursement to him for the wrong and collect the same, we see no reason why that should not end the matter; nor any reason why such money should go into the partnership fund. The personal damages suffered by the partner representing his personal expenditures on account of the tort of the other partner acting as agent

with another, it seems to us, belong to the partner individually. Also see Haller v. Willamowicz, 23 Ark. 566; Boughner v. Black, 83 Ky. 521, 4 Am. St. Rep. 174.

In this case the sheep were held in the custody of the sheriff under the bank's writ of sequestration for four days, and then re-plevied by this plaintiff (the defendant in the other suit) and remained in the latter's pos-session until the trial of the case, and the testimony was to the effect that all the sheep, on account of the negligent manner in which they were handled by the sheriff, suf-fered the injury pleaded. The sheep were weakened and depreciated, and considerably so partially on account of an inadequate pasture procured by the president of the bank in furtherance of the writ, in which pasture the sheep were grazed before re-plevied; and the money personally expend-ed, the jury, found, was made necessary by this damage, and we would not care to dis-turb the particular findings upon the facts.

It is assigned that, on account of the pro-vision in the bank's mortgage permitting the taking of the possession of the sheep after default in the payment of the note either by an agent of the bank or by an officer, there could be no recovery for the illegal seques-tration; that the issue of probable cause is not in this case. The assignment is as fol-lows:

"The court erred in submitting special issue No. 1, in the manner submitted, for the reason that there is no issue as to the truthfulness of the affidavit, and because, under the provisions of the mortgage held by the bank, it is imma-terial as to whether such affidavit was true or not.

"First Proposition under Fifth Assignment.

"The fact that the affidavit may have been untrue could not make the appellant bank liable in view of the provisions of its mortgage."

Both appellants objected and excepted to the submission of the issue.

[2] The trouble given us by this assign-ment is whether the proposition quoted above confines the specification of error as to ex-emplary damages and relief thereon to the bank only, and is waived as to Lester. The assignment plainly is in the nature of a proposition, but in appellant's brief is not submitted in terms as one. Where the as-signment sufficiently discloses the point, of course it is customary, if a proposition is not submitted, to say that the assignment, of itself, is submitted as a proposition, though the rule does not require it. That portion of rule No. 30 (142 S. W. xiii) says:

"Each point under each assignment shall be stated as a proposition unless the assignment itself may sufficiently disclose the point, in which event it shall be sufficient to copy the assignment."

The question is whether the proposition in this case, being applicable to the bank's immunity from exemplary damages, waives any relief as to Lester, if Lester also should not be liable for such damages. The case of Railway Co. v. Hill, 58 S. W. 258, by the Dallas Court of Civil Appeals, is rather in point:

"The matters in question were fairly raised by the assignments of error, which were copied at length in the brief, and submitted as proposi-tions. The contention is that, because the addi-tional propositions were submitted under the assignments, all points not covered by the ad-ditional propositions were waived. We think that, because the appellant saw fit to empha-size certain points, by submitting specific propo-sitions thereon, such action would not be a waiver of other points covered by the general proposition, and are of opinion that appellee's contention is not well taken."

Writ of error was denied by the Supreme Court, though, of course, we are not ad-vised whether the particular point was rais-ed in the application. However, the only real difference we see in the two cases is that in the case cited the assignments were submitted as propositions, and in this case it is not so suggested. The rule is to the effect that, if the assignment sufficiently discloses the point, the assignment of itself is suffi-cient without a proposition.

Hawkins, the mortgagor, authorized the bank, either by officer, in person, or by agent, or attorney, to enter the pasture where such property may be situated, to carry away the property and sell the same after notice, as provided by law, as given under execution. The bank being entitled to the right of pos-session after the maturity of the debt un-der the provisions of its mortgage, the se-questration as to it, placing the possession of the sheep with the sheriff, could not be illegal as a predicate for exemplary dam-ages, unless appellee's contention as to a cer-tain agreement between Lester and Hawkins would obviate this rule. Wedig v. Brewing Co., 25 Tex. Civ. App. 158, 60 S. W. 567; Buckingham v. Thompson, 135 S. W. 656; Nichols v. Paine, 52 Tex. Civ. App. 87, 113 S. W. 972.

[3] The jury found that Lester agreed with Hawkins that, if the latter would ship cer-tain individual sheep to market and apply the proceeds of the sale of same to the pay-ment of a partnership note due to the ven-dor, who had a prior mortgage on the sheep, that Hawkins could withdraw the same num-ber of sheep from the partnership in sub-stitution, and that Lester agreed that the defendant bank would release its mortgage as to such sheep, and that Lester would release his interest therein, and hence that the sequestration was at least in part upon plaintiff's sheep. The appellants, however, insist that Lester had such an adverse in-terest to the bank with reference to such a transaction that therefore such an agreement could not be within the ordinary scope of the president's authority, and would not bind the bank unless it specially authorized the same. It is true that the bank knew when Hawkins executed the note and mort-gage that Lester was a partner of Hawkins, and that Lester also owed the note. The record, though, does not show that the board

of directors or any other officer of the bank knew of any such agreement. Though it may be true that the agreement was for the purpose of paying in part a prior lien on the bank's mortgaged property, still there might be several conceivable reasons why the bank might object to such an agreement. It might consider other methods of protecting its interest and paying the prior lien than that of exchanging the partnership sheep, and, unless such an agreement was authorized, or thereafter ratified, on account of the double position of Lester, it could not bind the bank, even if we were entitled to assume that the president of a national bank had the authority by virtue of his position to make such an agreement.

"A person will not be permitted to take upon himself the character of an agent where, on account of his relation to others, or on account of his own personal interest, he would be compelled to assume incompatible and inconsistent duties and obligations. An agent owes to his principal a loyal adherence to his interest, and it would be a fraud upon the principal, and would contravene sound public policy, to permit a person, without the full knowledge and consent of his proposed principal, to enter into a relation involving such duty, when his allegiance had already been pledged to one having adverse interest, or when his own personal interests would be antagonistic to those of his principal." 1 Mechem on Agency (2d Ed.) § 177; Bank v. Harrell, 159 S. W. 863; Hawkins v. Bank, 175 S. W. 163; Jines v. Astle, 170 S. W. 1081, where on motion for rehearing there is a full discussion of similar questions.

Hence, we think, as applicable to the bank, it could not be considered that it was sequestrating the individual sheep of Hawkins. The court, in submitting the question of exemplary damages, as disclosed by the first and seventeenth special issues, confined the malice entirely to the question of probable cause as to the making of the affidavit and the issuance of the writ.

[4] For the mere issuance and the levy of the sequestration, aside from other questions discussed later, the bank could neither be charged with actual nor exemplary damages on account of the improper affidavit. Neither could Lester, the agent of the bank, suffer actual damages for the issuance of the sequestration, or the levy of same; the bank had the right to the writ and actual damages for its issuance could not apply.

[5, 6] The appellants, by a proposition under the sixth assignment, assert that:

"The appellants could be held liable for damages resulting from the negligence of the sheriff unless they directed that the act of negligence be done."

This, of course, is addressed to the matter of damages resulting to the sheep after the sheriff had assumed, under the writ, the custody of the same, distinct from damages flowing from an alleged illegal issuance and levy of the writ, which differentiation has to be borne in mind in the solution of this case. Under the provisions of the mortgage, entitling the bank to the possession of the sheep, and under the authorities cited, the bank could not suffer actual nor exemplary damages. The amount found by the jury, $482.40, and for which the trial court rendered judgment, was, as stated, for the expenditure by plaintiff made necessary by the negligent handling of the sheep under the directions of Lester. The broad assignment of appellants cannot be sustained, if for no other reason than that the testimony can be resolved, that Lester, as president and agent of the bank, in pursuance of the writ, the issuance of which was authorized by the bank, provided an inadequate pasture for the sheep, and it can be inferred that he directed the sheriff to use said pasture. Appellee insists that the exemplary damages, however, can be sustained because the jury found under special issue No. 17 that Lester was not only malicious in directing the officer to levy the writ, but found he was malicious in other directions he gave to the sheriff in handling said sheep, and that the same were handled in a grossly negligent manner. An analysis of that issue supports, by a fair interpretation, that the trial court conditioned the finding of malice in the second sentence of his special issue to the making of the affidavit for sequestration without probable cause; and the jury were then instructed, if they found in favor of the plaintiff on the above special issue, they could find exemplary damages, and the jury, in response to this issue, found exemplary damages in the sum of $1,915.60; hence the exemplary damages were found by the jury upon an issue for which, under the law, the basis does not exist. The jury did not find exemplary damages based upon the alleged malicious directions of Lester to, and in participation with, the sheriff in the negligent handling of the property. There is a finding of exemplary damages without any actual damages to sustain them.

[7] It is true that a trespass upon the property of others may be willful to the extent that malice and exemplary damages would follow, and the care of property might be such as to import such gross negligence and reckless indifference to the rights of others, in consequence of which exemplary damages would follow. In this case Lester was authorized by the board of directors to bring the suit, and, it may be inferred, to make the affidavit, but from which alone actual and exemplary damages would not follow. But for any other exemplary damages resultant from any other acts, and upon actual damages based upon any other facts, the corporation would have to authorize the same, or consciously approve the willful acts, if any were perpetrated.

In passing upon the question of partnership and the right of recovery for personal expenditures made necessary by the tort of another partner, we are, of course, confining it to the particular damage; as to what the rule would be if appellee had recovered damages based upon the shrinkage value, or

measured by the difference in value, is not raised upon this record. Justice Head, in the case of Barker v. Abbott, 2 Tex. Civ. App. 147, 21 S. W. 72, discusses the procedure and rule based upon a recovery where it is a partnership matter.

Again, as to exemplary damages chargeable against a corporation for the acts of its agent, it is the rule of law in this state, as stated, that the principal is not liable in punitory damages for the torts of the servant unless the master authorized the same, or, with knowledge of the wrong committed and its nature, has adopted or ratified it so as to make the particular act his own act. Gulf, Colorado & Santa Fé R. R. Co. v. Reed, 80 Tex. 366, 15 S. W. 1105, 26 Am. St. Rep. 749. We are not deciding whether the acts here, distinct from the making of the affidavit, the issuance of the sequestration, and the levy of same are sufficient to predicate exemplary damages. The specific question upon the peculiar condition of this record is not really raised, and the other questions upon this brief and record are sufficiently troublesome without such an excursion, though such a question is worthy of serious consideration upon this record and the authorities in this state.

[8] It is also assigned that the money expended by Hawkins in caring for the sheep is not the measure of damages. It is held that reasonable expenses incurred in taking care of and curing an injured animal, resulting from the wrong of the railroad company, is an element of damage, and can be recovered. I. & G. N. Ry. Co. v. Cocke, 64 Tex. 151.

[9] The appellee cross-assigns that the trial court erred in refusing to submit to the jury, as an element of damage, the value of lambs which, but for the ill treatment to the mothers, would have been born, and 500 of which, under the proof, would have been worth some $800. Clearly this is too remote. Baker v. Mims, 14 Tex. Civ. App. 413, 37 S. W. 190, where the value of unborn colts was attempted to be recovered.

We are also confronted with the question of the character of disposition of this case. If the bank knew of or in some manner ratified after knowledge of the agreement claimed to have been made between Hawkins and Lester, in regard to the substitution of sheep, it would be levying upon sheep it knew belonged to Hawkins, and not subject to the mortgage, and upon proper pleading and proof would open up the whole question of exemplary damages as to those particular sheep. If the proof could not be made, which we are unable to say, we would reform the judgment of the trial court, affirm the same as to the actual damages upon which it was rendered, and render judgment in favor of the bank and Lester for the exemplary damages. At present we pursue the course of reversing and remanding the cause for another trial.

We think other assignments are sufficiently covered by the discussion.

Reversed and remanded.

---

⬅⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

