## THOS. W. BLAKE LUMBER CO. v. GUARANTY STATE BANK OF WOODVILLE et al. (No. 8863.)*

(Court of Civil Appeals of Texas. Galveston. Dec. 9, 1926. Rehearing Denied Jan. 6, 1927.)

**1. Evidence ⬚⟹99—In action against lumber companies and bank for advances to former, their mortgages securing indebtedness to bank held irrelevant.**

In action against lumber companies and bank for advances made to former, which were indebted to latter, copies of mortgages and deeds of trust from lumber companies to trustee for benefit of bank, to secure indebtedness to it, *held* inadmissible as not tending to prove any relevant issue.

**2. Trial ⬚⟹39—Certified copies of chattel mortgages, theretofore properly filed, are inadmissible, where not filed in cause before announcement of ready for trial (Vernon's Sayles' Ann. Civ. St. 1914, art. 5657).**

Certified copies of chattel mortgages, theretofore properly filed with clerk of county court of county in which mortgaged property was located, are inadmissible, where not filed in cause before announcement of ready for trial, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 5657.

**3. Contracts ⬚⟹188—Bank which was not party cannot be liable on written contract under which plaintiff made advances to lumber companies.**

Bank which was not party cannot be liable on written contract between plaintiff and lumber companies, under which plaintiff made advances, notwithstanding that lumber companies were indebteded to bank and contract was negotiated by officer of lumber companies who was also officer of bank.

**4. Evidence ⬚⟹441(1)—Testimony that bank orally agreed to guarantee plaintiff against loss in making advances to lumber companies under written contracts is inadmissible.**

Testimony that bank orally agreed to guarantee plaintiff against loss in making advances under written contracts to lumber companies is inadmissible, since it is presumed that parties merged in contracts all previous stipulations tending to enlarge objects referred to.

**5. Banks and banking ⬚⟹111—Bank's vice president, being secretary treasurer of lumber companies, cannot bind bank by representation that it will protect plaintiff making advances to lumber companies.**

Vice president of bank, who was also secretary and treasurer of lumber companies which were indebted to bank, *held* to have such interest in lumber companies that bank was not bound by his representation that it would guarantee plaintiff against loss in making advances to lumber companies, where plaintiff knew of his conflicting interests.

**6. Banks and banking ⬚⟹116(1)—Bank is not presumed to know of vice president's representation that it would protect plaintiff in making advances to lumber companies of which vice president was secretary treasurer.**

Bank is not presumed to know of vice president's representation that it would protect plaintiff in making advances to lumber companies, where vice president was also· secretary treasurer of such companies, which were indebted to bank, in view of his conflicting interests.

**7. Frauds, statute of ⬚⟹20—Statute prevents bank's oral agreement to protect plaintiff in making advances to lumber companies.**

Bank cannot make binding parol agreement to guarantee plaintiff against loss in making advances to lumber companies in view of statute.

**8. Banks and banking ⬚⟹99—Bank's parol agreement to protect plaintiff in making advances to lumber companies was ultra vires (Vernon's Sayles' Ann. Civ. St. 1914, arts. 1164, 1165).**

Bank's parol agreement to guarantee plaintiff against loss in making advances to lumber companies, by reason of which it received no benefits, is ultra vires and void, in view of Vernon's Sayles' Ann. Civ. St. 1914, arts. 1164, 1165.

**9. Banks and banking ⬚⟹227(3)—Evidence of loss on advancements held not sufficient to render bank liable on agreement to protect plaintiff in making advances to lumber companies.**

Bank is not liable on agreement to protect plaintiff against loss in making advances to lumber companies, where it is not shown that plaintiff suffered loss thereon, he having made other advances to such lumber companies and not having shown statement of account with them except amount due at end of all transactions.

Appeal from District Court, Harris County; W. E. Monteith, Judge.

Action by the Thomas W. Blake Lumber Company against the Guaranty State Bank of Woodville and others. From the judgment plaintiff appeals. Affirmed.

John B. Warren, of Houston, for appellant. J. E. Wheat, of Woodville, for appellees.

LANE, J. This suit was brought by Thos. W. Blake in the name of Thos. W. Blake Lumber Company, under which name he was doing business, against the Guaranty State Bank of Woodville, Tex., the R. L. Lumber Company of Woodville, a corporation, hereinafter for convenience referred to as the R. L. Lumber Company, and the Heyman-Pate Lumber Company of Houston, Tex., a corporation, hereinafter referred to as the Heyman Lumber Company, to recover certain sums of money alleged to be a balance due him upon certain alleged advances made by him to the defendants. A judgment was sought against the defendants Guaranty

⬚⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction March 2, 1927.

State Bank of Woodville, the R. L. Lumber Company, and the Heyman-Pate. Lumber Company, in the sum of $4,630.85, with interest at 8 per cent. per annum from August 14, 1923, and for judgment against the R. L. Lumber Company and the Guaranty State Bank of Woodville for the sum of $2,735.72, with interest from November 8, 1923.

For cause of action the plaintiff alleged, substantially,. that he was engaged in the wholesale selling of lumber, and also in the sale of lumber on a brokerage basis; that on the·27th day of March, 1922, he entered into an agreement with the Heyman Lumber Company to sell the output of its sawmill for a brokerage fee of $1.75 per thousand feet; that it was stipulated in said agreement that he was to set aside 80 per cent. of the proceeds of the sales made by him, from which he was to pay the stumpage charges due by the lumber company, and that the balance thereof was to be paid to said lumber company, less the brokerage due him; that the remaining 20 per cent. of such proceeds was to be used by him, first, in the payment of "any and all claims that might have been made by the plaintiff's customers against the several outturns," and that the balance of said 20 per cent. should be divided between the plaintiff and the lumber company, and that that portion of said 20 per cent. retained by plaintiff was to be applied to the payment of a note for the sum of $2,500 due by the lumber company; that by said agreement plaintiff had full power to make all settlements with his customers on any claim made by them against the lumber· shipped under sales made under the contract; that the parties operated under said contract from its date to about the 19th day of June, 1922, at which time there was a reorganization of said lumber company; that at the time of such reorganization the Guaranty State Bank of Woodville made a loan of $3,000 to the lumber company, for which the lumber company executed and delivered its note; that to secure the payment of such note the lumber company gave the bank a deed of trust upon all of its assets of every kind and nature, and it was agreed by said instrument that it should extend to any renewal of any indebtedness due by the lumber company to the bank, as well as to any debt made in the future.

The plaintiff further alleged:

That, after the giving of said deed of trust, it was agreed by the parties thereto that plaintiff might continue to handle the output of the lumber company under the same terms and with the same powers as set out in the contract entered into between him and the lumber company on the 27th day of March, 1922, except that all remittances should be made by the plaintiff to the bank from sales, for the account of the lumber company, after first making proper deductions. That thereafter, and until the 14th day of August, 1923, plaintiff handled the outturn of the mill of the lumber company under the terms of said agreement.

That in December, 1922, the R. L. Lumber Company also entered into a contract with plaintiff to sell the lumber manufactured by it for the term of one year; the provisions of such contract being practically the same as in the contract between plaintiff and the Heyman Lumber Company. That the bank became interested in the R. L. Lumber Company by reason of loans made by it to said lumber company, to secure payment of which it took deeds of trust on the timber and lumber of said lumber company, and a lien upon the outturn of said lumber. That both of said contracts were entered into on the part of the contracting parties at .the specific instance and request of the bank by and through its active vice president, Burlew. That said vice president explained to the said plaintiff that both of the said lumber companies were indebted to the bank, and it was the desire of the bank that plaintiff assist the bank and the lumber companies in the sale of the output of said lumber companies, and to assist the bank in financing the operations of the said companies, by making advances to the bank to be credited to the lumber companies, to keep as low as possible on the books of the bank the indebtedness of the said lumber companies to it, and to enable the said bank to ultimately realize on the debts owed by the said companies to the bank.

That, at the instance and request of the said bank at various and sundry times, he advanced large sums of money to the bank for the account of the lumber companies; it being. agreed between the plaintiff and the bank that for such advances the bank would cause the lumber companies to deliver to the plaintiff the output of the lumber companies, which plaintiff was to sell, and, after deducting all claims and expenses of sale, including brokerage of $1.75 per thousand feet, the balance to be credited on such advances theretofore made by the plaintiff, and, if such sums exceeded the advances, same was to be paid to the defendant Guaranty State Bank for the account of the lumber companies.

That on or about August 1, 1923, the said bank and Heyman-Pate Lumber Company were largely indebted to him for advances made on invoices in excess of the sales price of the lumber shipped by the defendants to the plaintiff's customers, after all proper deductions were made in accordance with the terms of the said sales contract, and plaintiff was entitled in equity to a lien on the lumber that was on the yards of the Heyman-Pate Lumber Company, at Warren, Tex., as against said bank and lumber company, for the advances so made by him in excess of the net proceeds of the sale of said lumber, and made by him upon the faith of the continuance of the said contract by which plaintiff might be repaid the said advances.

That on or about August 14, 1923, the de-

fendant bank, through its active vice president, H. G. Burlew, represented to him that he was entirely familiar with the affairs of the said two lumber companies, and was endeavoring to work out of their operations the debts due by them to the Guaranty State Bank. That the bank examiner had recently made demand of him that the debts of the said two companies be reduced or paid. That he was compelled to get some money upon the obligations of these two lumber companies to the bank. That the bank had liens on the physical properties of the said companies, and that the Heyman-Pate Lumber Company had on its yards at Warren, Tex., 700,000 feet of pine lumber, and the bank desired the assistance of the plaintiff in the matter of disposing of the said lumber. That the mill of the Heyman-Pate Lumber Company had been shut down, and the said company was insolvent and was willing to turn over said lumber to the bank, and had consented that the bank might deliver the said lumber to the plaintiff for the purposes of sale, and likewise desired the assistance of the plaintiff in disposing of the same. That he might handle the said lumber upon the same basis that he had been handling the output of the Heyman-Pate Lumber Company.

That the said Burlew, for said bank, agreed that, if plaintiff would advance $10,000 on said 700,000 feet of pine lumber, the bank and lumber company would deliver the same to plaintiff for the purpose of sale, and out of the proceeds thereof the plaintiff might set up a fund out of which to pay the advances theretofore made, for brokerage and the claims against the lumber shipped, and deduct the same from the proceeds of the sale of the said lumber, and the remainder to be applied by the plaintiff to the advance of said $10,000, until it had been repaid to the plaintiff with interest, and the balance, if any, should be remitted by the plaintiff to the said bank and applied by the bank on the indebtedness of the said lumber company to it. That the said bank through its vice president agreed, in lieu of a cash advance of $10,000, to accept the promissory notes of the plaintiff due in 90 days, for the sum of $5,000 cash, stating that he would negotiate said notes and obtain the money thereon, that, if plaintiff would make said advance, the bank agreed to obtain from the R. L. Lumber Company an agreement upon its part that it would dress the said lumber for the sum of ——— dollars per thousand feet, and the expense of dressing the same should be deducted by plaintiff as a part of the expense of handling the same, and would also obtain from the said lumber company a written guaranty that the plaintiff would receive out of the lumber of the Heyman-Pate Lumber Company the sum of $10,000, after making all proper deductions. That the said Burlew represented to him that he was safe in making the said advance of $10,000, for the reason that the said lumber company had on its yards 700,-000 feet of pine lumber at Warren, Tex., and the R. L. Lumber Company was solvent and would give the said written guaranty, and that the bank would stand between the plaintiff and all loss, by reason of making the said advance. That he relied upon the representations of the said vice president of the bank and was induced by said representations to deliver to the bank his two promissory notes for the sum of $5,000 each, due in 90 days, and thereafter, in due course paid the notes; the said bank having negotiated the same.

That the representations of the said Burlew were false and made by said representative of the said bank for the purpose of deceiving the plaintiff and did deceive him and induced and caused him to deliver said notes to the bank, and thereafter pay the same. That the said representations were false and fraudulently made to the plaintiff in Houston, Harris county, Tex., and caused him to agree to sell said lumber and make said advance. That the Heyman-Pate Lumber Company was domiciled in Harris county, Tex., and consented to the said bank taking the said lumber and to the plaintiff's selling the same. He alleged that the bank and said lumber company did not deliver, or cause to be delivered, 700,000 feet of lumber, as agreed upon, but delivered to the plaintiff for the purpose of sale 580,232 feet of pine lumber, leaving a shortage on said deliveries of 119,576 feet, and, after the said defendants had been credited with all the proceeds of the sale of said lumber, after proper deductions had been made, there remained due to the plaintiff the sum of $4,630.85, with interest thereon at the rate of 8 per cent. per annum from the date of said advance, to wit, August 14, 1923, which amount the said defendants and the R. L. Lumber Company agreed to pay to the plaintiff.

That the said bank, by and through its vice president, on or about November 8, 1923, at a time when plaintiff was acting as the sales agent for the R. L. Lumber Company, under a different contract, represented to the plaintiff in Houston, Tex., that the bank examiner was again demanding that the defendant bank reduce the indebtedness of the R. L. Lumber Company to it, or have the same paid, and that it was compelled to have another advance upon the lumber of the R. L. Lumber Company, at Woodville. That the said lumber company had consented for the bank to deliver the said lumber, or sell the same to the plaintiff, the proceeds of the sale of said lumber to be used by the said bank in liquidating the debt of the said lumber company to the bank. That the bank and the R. L. Lumber Company desired that the plaintiff handle the same, and the bank had liens on said lumber and the physical properties of the said lumber company, and, if the plaintiff would handle the said lumber, same might be handled upon the same basis as he had

heretofore been handling the output of the said lumber company under the terms of the written contract. That the lumber company had on its yards at Woodville 650,000 feet of lumber, of which 635,000 feet was pine and 15,000 feet was hardwood lumber. That the bank was compelled to have an advance upon said lumber of $10,450, and, if the plaintiff would advance that sum upon said stock of lumber, the bank would see that it was delivered to the plaintiff for purposes of sale, and out of the proceeds of the same that plaintiff might deduct his brokerage and all claims made against said lumber by the plaintiff's customers, and out of the remainder set up a fund to be used by the plaintiff to repay himself the proposed advance of $10,450, with interest thereon. That the lumber company was solvent, and the plaintiff was safe in making the advance, as the bank would stand between the plaintiff and all loss, and see that the 650,000 feet of lumber was delivered to the plaintiff for the purposes of sale. That the bank, in lieu of a cash advance, would accept the promissory notes of. the plaintiff and would negotiate the same and obtain the money thereon as had been done in the case of the Heyman-Pate Lumber Company transaction. That the said lumber company had turned over the said lumber to the bank for the purposes of sale so that the bank might obtain from such sales the proceeds to be applied upon the indebtedness of the said lumber company to the bank.

That he relied upon the representations, and was induced thereby, on or about November 8, 1923, to deliver to the bank his promissory notes, one for the sum of $5,000, and the other for the sum of $5,450, the proceeds of the same to be applied by the bank to the liquidation of the account of the said lumber company. That, acting under the said agreement, he proceeded to sell, and did sell, all of the lumber turned over to him by the defendants R. L. Lumber Company and the bank, but they did not deliver the lumber as agreed upon, but delivered only 576,366 feet of lumber. leaving a shortage of 73,634 feet, and, after making all proper deductions there remained due this plaintiff on said advance the sum of $2,735.72, with interest thereon at the rate of 8 per cent. per annum from November 8, 1923.

Plaintiff further alleged: That the said defendants bank and R. L. Lumber Company, after he had made said advance, sold a large portion of said lumber and appropriated the proceeds to the liquidation of the account of the R. L. Lumber Company with the said bank, and thereby violated the agreement by said defendants with the plaintiff: That the said bank, in making the representations and taking the notes, and agreeing to deliver the lumber of the lumber companies to the plaintiff for the purposes of sale, was acting by and through its active·vice president, Burlew, duly authorized, and in said transactions the said Burlew was acting within the apparent scope of his authority.

The defendant bank answered by general demurrer, special exceptions, a general denial, and by specially pleading that, if it did undertake to engage in the lumber business in any manner under the agreement alleged by plaintiff, or to become surety for a third party, which it denied, such agreement would be ultra vires and void and prohibited by law.

The defendant further pleaded that it was not bound by the acts, contracts, or agreements of the said Burlew in negotiating the sale of the said lumber of the Heyman-Pate Lumber Company, or the R. L. Lumber Company as alleged, for the reason that the said Burlew was secretary and treasurer of the said lumber company and as active officer therein, and in the negotiations and sale of the said lumber was representing the said lumber companies, and on account of his interest in the said lumber companies he could not act for and bind the bank in any manner.

The bank further pleaded that neither the contract and agreement, as alleged, nor any memorandum thereof, was in writing, and was therefore prohibited by the statute of frauds; that the said Burlew was not authorized by the board of directors of the bank, and had no authority, by virtue of his position with the bank, to make and enter into any of the agreements or contracts, for or on behalf of the bank, and whatever contracts and agreements were made by the said H. G. Burlew were without authority, and the defendant bank had not approved or ratified the same, nor received nor accepted any benefits therefrom with knowledge thereof; that the defendant, being a banking corporation, is·restricted to the object of its creation and prohibited from creating any indebtedness except for money paid, labor done, or property received; that the plaintiff has not paid the defendant any money, has not performed any labor, and has not conveyed to it any property, and therefore any indebtedness claimed by the plaintiff against the defendant would be in violation of the statutes of this state and unenforceable.

By supplemental petition, plaintiff alleged that Burlew, as vice president and a director of the bank, had authority to make the agreements and representations alleged by plaintiff, and thereby to bind the bank, in that he was endeavoring to collect a debt due the bank, and in that the bank held out Burlew as having authority to make collections for it and as having authority to transact business for it in the affairs of the lumber companies and to make collections from them on debts due it from them, and thereby led plaintiff to believe that Burlew had authority to do the acts complained of by plaintiff, and is thereby estopped now to deny the authority of Burlew to bind it in such matters; that the bank, with full knowledge of the matters alleged, accepted benefits of plaintiff's services in such

matters, and with knowledge of the representations and agreements as alleged, accepted the advances made by him to be used by it in the payment of the debts of the lumber companies to it.

Neither of the lumber companies made answer.

A jury was selected, impaneled, and sworn to try the cause. After the evidence was all in, the court instructed the jury to find for the plaintiff as against the lumber companies for the sums sued for against them, respectively, and also instructed a verdict for the defendant Guaranty State Bank of Woodville. The jury returned its verdict in accordance with such instructions, and judgment was accordingly rendered. From so much of the judgment as is in favor of the bank, the plaintiff has appealed.

By his first and second assignments, appellant complains of the action of the court in refusing to permit him to introduce in evidence copies of a chattel mortgage and deed of trust executed by the Heyman-Pate Lumber Company to one J. E. Wheat, trustee, for the benefit of defendant bank, and in also refusing to permit the introduction in evidence of certified copies of a certain mortgage and deed of trust executed by the R. L. Lumber Company to said Wheat, trustee, for the benefit of said bank.

[1, 2] We overrule both of the complaints, because, first, it is not apparent, we think, that either of the instruments would tend to support proof of any relevant or material issue in the case; and, second, said copies were not filed in the cause being tried before announcement of ready for trial, and by article 5657, Vernon's Sayles' Civil Statutes 1914, it is provided, that, if any party to a suit shall desire to use certified copies of chattel mortgages theretofore properly filed with the clerk of the county court, in which the property mortgaged is situated, as evidence in any cause, he shall file the same with the papers in the cause before announcing ready for trial, and not afterward.

The other assignments of appellant, when reduced to their ultimate, are, in substance, a contention that the court erred in peremptorily instructing a verdict in favor of the Guaranty State Bank of Woodville, in that the evidence raised a question of fact relative to the liability of the bank, as made by the pleadings, which should have been submitted to the jury for their determination.

The petition of the plaintiff is so ingeniously prepared as to present on its face a cause of action against the bank for breach of contract only. It does not allege that the bank, or any one else for it, made false or fraudulent representations as to any then existing facts by reason of which it or they obtained any thing of value from the plaintiff. It is alleged that the defendants represented to plaintiff that the Heyman-Pate Lumber Company had 700,000 feet of lumber on its yard, and that the R. L. Lumber Company had 650,000 feet on its yard; and it is further alleged that the defendants agreed to deliver such lumber to plaintiff, but that the defendants thereafter failed to deliver to plaintiff all of the lumber which they had contracted to deliver.

There is no evidence to support the allegations of a breach of contract existing between the bank and plaintiff. The contracts, the breach of which forms the basis of this suit, were in writing, and are clearly the contracts of the two lumber companies and the plaintiff, to neither of which was the bank a party. We are of opinion that, when the evidence is considered as a whole, it shows that no judgment other than the one rendered, as between the plaintiff and the bank, could have been lawfully rendered, and that in such case the trial court properly instructed a verdict for the bank.

The undisputed evidence shows that the Heyman-Pate Lumber Company was incorporated in the early part of the year 1922 by Heyman, Pate and Richardson, who owned all of its stock. Heyman was president and Pate was vice president. On the 27th day of March, 1922, this company entered into a sales contract, by the terms of which the plaintiff, T. W. Blake, agreed with the lumber company that, if it would ship him the output of its lumber mills, he would sell the same for a commission of $1.75 per thousand feet; that out of the proceeds of such sales he would set up 80 per cent. thereof, out of which he would pay $3 per thousand feet to those whom the lumber company owed for stumpage, or such part thereof as was necessary to make such payments, and to pay the balance thereof to the lumber company, less his brokerage charges of $1.75 per thousand feet; that out of the other 20 per cent. of such proceeds, he would first pay all just claims made by those to whom he made sales, as against the outturn of the lumber sold and shipped to them; that out of the remainder thereof he would pay a note of $2,500 due by the lumber company to the Union National Bank. This contract was to be in force for one year from its date. On the 19th of June, 1922, however, J. E. Pate purchased all the stock owned by Heyman in the lumber company, and one H. G. Burlew became the owner of one-third of the stock. The entire stock was then owned, one-third by Pate, one-third by Burlew, and one-third by Richardson. Thereafter Pate was made president and Burlew, then active vice president of the Guaranty State Bank, was made secretary and treasurer. In the conduct of the business, Pate looked after the lumber, Richardson the mills, and Burlew the finances of the company.

Plaintiff alleged, and it may be taken as true against him, that on the 19th day of June, 1922, the time Burlew became a stockholder and secretary and treasurer of the

Heyman-Pate Lumber Company, the lumber company borrowed $3,000 from the Guaranty State Bank of Woodville, evidenced by its note of that date, and that to secure payment of said note it executed to one J. E. Wheat, trustee for said bank, a deed of trust upon all of its physical assets, including its mill, timber, and lumber, the outturn of its timber and mill. It was also stipulated in said deed of trust that the lien thereby given should extend to any renewal of any indebtedness of the bank and also to any debt which it might incur with the bank thereafter; that the bank agreed with the lumber company that Blake might continue to handle the lumber of said company under the same terms as provided in the contract made with Blake by the lumber company of date March 27, 1922, except a reservation that all remittances should be made of the proceeds of sales to the bank for the account of the lumber company, and that Blake did thereafter handle the lumber under the terms of said last-mentioned agreement up to the 14th day of August, 1923.

The R. L. Lumber Company was organized and chartered in September, 1922, with H. G. Burlew as its secretary and treasurer, and the evidence shows that he was permitted to manage its affairs generally.

On the ——— day of December, 1922, the R. L. Lumber Company entered into a sales contract with the plaintiff for the sale of its lumber, similar in terms to that entered into between the Heyman-Pate Lumber Company of date March 27, 1922.

The plaintiff alleged that the bank had a lien upon the timber and the outturn of the R. L. Lumber Company to secure an indebtedness owing by said lumber company to it, and that, by agreement made by Burlew, the active vice president of the bank, plaintiff acted as sales agent for both of the lumber companies. There is, however, no evidence of the existence of the alleged deed of trust to be found in the statement of facts. Up to September, 1922, H. G. Burlew was the active vice president of the Guaranty Bank, and was generally active in looking after its financial affairs, and was receiving $150 per month for his services. After the organization of the two lumber companies, he was made secretary treasurer of both of them, and was paid for his services to the Heyman-Pate Lumber Company the sum of $100 per month, and by the R. L. Lumber Company for the services rendered it the sum of $175 per month, and, after assuming his duties to these lumber companies in September, 1922, he received from the bank a salary of $50 per month only. After assuming his duties with the lumber companies, he devoted almost all of his time to such duties and but little time in looking after the affairs of the bank, though he continued to keep his office at the bank and there attended to the business of the lumber companies and a limited amount of business for the bank.

The plaintiff testified that in August, 1923 (one year after Burlew became secretary treasurer of both lumber companies, and general financial manager of their affairs), Mr. Burlew came to Houston and told him that the Heyman-Pate Lumber Company was very heavily indebted to the Guaranty State Bank, and asked him to make an advance to it on the lumber which it had on hand at Warren; that he guessed that Burlew wanted such advance made to the bank so the bank could take up the notes of the lumber company to it; that Burlew told him that the bank examiner wanted them to take up such debt and that he had to have some money "in the bank" to take up those notes; that at the time of this conversation he was operating under his contract of sale of March 27, 1922; that at such time Burlew said he needed about $10,000, he stated he had on hand at Warren 700,000 feet of lumber and needed in the neighborhood of $10,000 to put this account square on their books and remove the criticism of the bank examiner; "that the Heyman-Pate Lumber Company had shut down its mill and turned that lumber over to the bank, and that in his opinion they were insolvent, and they had to turn the lumber over to the bank; that they had a mortgage on the mill, the lumber, and all the physical properties of that institution, and he had to get this money out of the sale of this lumber in some manner; that he had to reduce that indebtedness, and that the Heyman-Pate Lumber Company had turned that lumber over to the bank to dispose of it in order to reduce this indebtedness; that he wanted me to handle this lumber and sell it to the best advantage, and deduct the $1.75 per thousand feet and make the remittance;" that Burlew stated to him, in substance and effect, that, if he (plaintiff) would make the advance asked for, the bank would stand between him and a loss; that he told Burlew that he did not want to sustain a loss in the transaction; that he was merely handling the lumber on a brokerage basis and wanted to be protected against any loss he might have in handling the lumber; that in reply Burlew said that the R. L. Lumber Company was thoroughly solvent, and that he could get it to guarantee him against any loss in the transaction; that he (Blake) said to Burlew that, if Burlew thought that the R. L. Lumber Company was solvent and would protect him in the matter he would make the $10,000 advance asked for; that Burlew said that he was safe in making the advance to the bank; that the lumber had been turned over to it by the Heyman-Pate Lumber Company for disposition; and that he would guarantee him (Blake) against loss in the transaction.

In testifying about two notes for $5,000 each which he executed, payable to the Heyman-Pate Lumber Company as an advancement on its lumber, the plaintiff said that Burlew told him that he would apply the

notes on the indebtedness of the lumber company; that he would sell the notes to some one in Dallas and apply the proceeds on the lumber company's account; that he did not give him the notes that day;. that he told Burlew that, if an agreement could be drawn whereby he would be protected, he would give him the notes; that at the time of the conversation last stated he was in Woodville; that in his dealings with the Guaranty State Bank he always dealt with Burlew, vice president; that, at the time Burlew was in Houston, he (Blake) did not deliver the notes to Burlew; that he told Burlew that he would go to Woodville and look the situation over and let him know definitely whether he would make the advances asked for; that he went to Woodville at the request of Burlew and met him in the bank, and Burlew told him that the bank would stand between him and a loss, if he would make the advances; that he (Burlew) would guarantee him against loss; that he went to Warren and made an estimate of the quantity of lumber and then returned to Houston, and the next day Burlew called him over the telephone and said he had prepared the papers and asked if Blake would sign the notes, and that he told Burlew that he would do so; that Burlew came to Houston that day, and he signed the notes and gave them to Burlew. The notes were for $5,000 each and dated August 17, 1923, payable to Heyman-Pate Lumber Company three months after date, to bear interest after maturity.

The board of directors of the lumber company passed a resolution authorizing Burlew to borrow the money, and also authorized the execution of the contract hereinafter shown.

On August 21, 1923, Burlew wrote Blake a letter and inclosed the contracts set out below to secure the $10,000 loan, and in his letter told Blake that, if the papers were not drawn to suit him, to advise him (Burlew) and that he would fix them to suit Blake. The contracts were accepted by Blake and are as follows:

"State of Texas, County of Tyler.

"This contract and agreement, made and entered into on this the 14th day of August, A. D. 1923, by and between Heyman-Pate Lumber Company, a corporation, with its place of business at Warren, Tex., and the Thomas W. Blake Lumber Company, with its office and place of business in Houston, Harris county, Tex., witnesseth:

"First. That the Heyman-Pate Lumber Company has bargained, sold, and delivered, and by these presents does bargain, sell, and deliver unto the said Thomas W. Blake Lumber Company, all of the stock of lumber now located on the yard at the sawmill of the said Heyman-Pate Lumber Company at Warren, Tex., consisting of about 700,000 feet, for and in consideration of the sum of $10,000 in cash, the receipt of which is hereby acknowledged, and the further payments hereinafter mentioned.

"Second. The Thomas W. Blake Lumber Company agrees and binds itself to use its best efforts to sell and dispose of said lumber for the best market price obtainable, and, after the same has been sold and delivered by the said Thomas W. Blake Lumber Company, and the proceeds of said sale have been collected, the said Thomas W. Blake Lumber Company agrees to pay to the Heyman-Pate Lumber Company as a further consideration for said lumber the difference between the amount received for said lumber and the amount paid on the execution hereof, less $1.75 per thousand feet.

"In witness whereof the parties hereto have caused this instrument to be executed by the respective officers on the day and year above written.

"Heyman-Pate Lumber Company,
"By J. E. Pate, President.
"Attest: H. G. Burlew, Secretary, Thomas W. Blake Lumber Co."

"State of Texas, County of Tyler.

"Whereas, on the 14th day of August, A. D. 1923, the Heyman-Pate Lumber Company sold and delivered to the Thos. W. Blake Lumber Company all of the stock of lumber now located on the yard at the sawmill of the said Heyman-Pate Lumber Company at Warren, Tex., consisting of about 700,000 feet; and,

"Whereas, the said Thomas W. Blake Lumber Company desires to have said lumber dressed before it is resold under the terms of said contract, and it is not known whether they (Heyman-Pate Lumber Company) will be able to dress the same:

"Now, therefore, know all men by these presents: That the R. L. Lumber Company, a corporation with its office and place of business at Woodville in Tyler County, Tex., hereby agrees and binds itself to dress all of the lumber now located on the yard of the said Heyman-Pate Lumber Company, in the event that the said Thos. W. Blake Lumber Company is unable to have said work done by the Heyman-Pate Lumber Company, or so much thereof as the said Thos. W. Blake Lumber Company may desire, and the cost of dressing the same is to be paid to the R. L. Lumber Company by the said Thos. W. Blake Lumber Company as a part of the expense of handling and reselling the same and shall be deducted from the sale price. However, the R. L. Lumber Company hereby guarantees that the said Thos. W. Blake Lumber company will receive the sum of $10,000 from the proceeds of the resell of said lumber, and said purchase price shall be repaid to the said company before any amount shall become due and payable to the said R. L. Lumber Company.

"In witness whereof, the R. L. Lumber Company has caused these presents to be signed by its president and attested by its secretary this the 20th day of August, A. D. 1923.

"R. L. Lumber Company,
"By J. T. Lindsey, President.
"Attest: H. G. Burlew, Secretary."

Burlew sold the notes for $9,760.50, and deposited the proceeds in the Guaranty State Bank to the credit of the Heyman-Pate Lumber Company.

The undisputed evidence shows that all of such deposit was drawn from the bank by the lumber company, and that not one cent thereof was paid upon its indebtedness to the

bank. The undisputed evidence shows that the indebtedness due by the Heyman-Pate Lumber Company to the bank at no time from June, 1922, to the close of its account with the bank exceeded $6,000, and that the payment of such indebtedness had at all times since June, 1922, been amply secured by a lien upon all the assets of the lumber company, including the sawmill of said company located at Warren. And it shows that such indebtedness was paid by a sale of an old saw rack for $250 and by a conveyance by the lumber company to the bank of its mill at Warren for the sum of $5,750. It further shows that Burlew was never at any time authorized by the board of directors of the bank to take possession of any of the lumber under its mortgage.

Admitting, for the purpose of disposing of appellant's contention that the trial court erred in instructing a verdict for the Guaranty State Bank, that Burlew told appellant that the lumber company was largely indebted to the bank, that the bank examiner was demanding that such indebtedness be reduced, that the lumber company had turned its lumber over to the bank for disposition, that he wanted the advance of $10,000 to pay the debt of the lumber company to the bank, and that the bank would guarantee appellant against loss by reason of such advance, the undisputed evidence shows that the representations that the lumber company had turned its lumber over to the bank, under the mortgage of the bank, for disposition, and that the bank wanted the advance of $10,000 on the lumber to enable it to collect such sum from the lumber company, were in fact untrue, and it also shows that no one connected with the bank other than Burlew had any knowledge that Burlew had made the representations and guaranties to appellant alleged and testified to by appellant.

We next come to a statement of the facts as they relate to the R. L. Lumber Company. As we have already stated, the company last named was organized in 1922, and at the time of its organization, or shortly thereafter, H. G. Burlew became its secretary and treasurer, and was made the general manager of its affairs. In December, 1922, said company contracted with appellant Blake to handle its lumber, as did the Heyman-Pate Lumber Company. While this contract was in force, and while Blake was handling the lumber of the company under its terms, H. G. Burlew saw Blake on or about October, 1923, told him that the lumber company was indebted to the bank, that the bank was demanding payment of such debt, and that he wanted Blake to advance $6,000 to the company so it could pay the bank. Blake did not advance the money, but to satisfy Burlew executed his note for $6,000 on the 16th day of October, 1923, payable to the bank, and delivered it to Burlew, who delivered it to the bank to be placed to the credit of the lumber company. Thereafter, on the 8th day of November, 1923, Blake advanced to Burlew, upon the lumber of the lumber company, which he was to handle under his contract, the sum of $10,450, which was deposited in the bank to the credit of the lumber company, subject to check of said company. After such deposit was made, the R. L. Lumber Company gave Blake a check on the bank for $6,000; Blake passed the same to the bank, and the bank returned to Blake the note for $6,000 above mentioned.

With reference to the advance of the $10,450, Blake testified that he, between August 14, 1923, and November 8, 1923, executed and delivered the above-mentioned note for $6,000 to Burlew; that at a later date Burlew came to Houston and told him that he had to have about $10,000, and asked if he (Blake) would make a similar advance to the R. L. Lumber Company as he had to the Heyman-Pate Company; that he told Burlew that, if he was pressed and he had the lumber on hand to show for it, and provided he was guaranteed against loss, he would make the advance; that Burlew told him that the R. L. Lumber Company had consented for him to take the lumber and turn it over to the bank, and that at any time he would come to Woodville Burlew would produce the necessary authority showing that the R. L. Lumber Company had turned over the lumber to him; that Burlew said the lumber was in the hands of the bank; that after Burlew came to Houston and told him that the bank wanted $10,450, he (Blake) went to Woodville, as he told Burlew he would, for the purpose of taking an inventory of the lumber; that after taking such inventory, after Burlew had made the representations above mentioned, he agreed to and did make the advance of $10,450.

Testifying further he said:

"I did not have any written guaranty of any kind from the bank. I didn't ask the president of the bank anything about this guaranty, and I didn't ask the cashier anything about it, nor the assistant cashier. I didn't have any relations with anybody but Mr. Burlew, the vice president of the Guaranty State Bank, in regard to bank matters. It is true that, in addition to being vice president of the bank, Mr. Burlew was secretary and treasurer of the lumber companies. I didn't ask for any resolution by the board of directors of the Guaranty State Bank to guarantee me against loss. I had had relations with them for a year, and I didn't see any necessity for a resolution. When I borrow money they don't pass any resolution. I had confidence in the bank. In other words, the only man I had any dealings with in the bank was Mr. Burlew, with whom I was dealing for these lumber companies."

The undisputed evidence shows that, at the time the two advances of $10,000 and $10,450 were made to the Heyman-Pate Lumber Company and the R. L. Lumber Company, respectively, both of said companies owed Blake considerable sums of money, and that these

debts were paid out of the sales of the lumber turned over to Blake for sale. There was no evidence to show what sums Blake received for the lumber, nor how he applied the proceeds of the sale of same. It is shown only that, after the various transactions between Blake and the lumber companies had ended, the Heyman-Pate Lumber Company owed Blake $4,630.85, and that the R. L. Company owed him $2,735.72. Blake testified that, when he referred to what the bank said or did in his testimony, he meant Burlew.

Under the facts shown no judgment could have been rendered against the bank for the following reasons:

[3, 4] First. All of the contracts consummated by the negotiations between Blake and Burlew, relative to the Heyman-Pate Lumber Company advancement of $10,000, were in writing, and show that they were executed by the president and secretary treasurer of the Heyman-Pate and the R. L. Lumber Companies, and show on their faces that these companies and Blake only had thereby assumed the obligations therein stated, and that the bank was not a party to any one of them. Testimony that the bank had orally promised to guarantee Blake against loss was inadmissible, and in such case it will be presumed that the parties merged in the contracts all previous stipulations tending to enlarge the objects referred to in the writings, and no one whose name does not appear thereto as an obligee can be held liable thereon. Waggoner v. Magnolia Pet. Co. (Tex. Civ. App.) 252 S. W. 865; Manley v. Noblitt (Tex. Civ. App.) 180 S. W. 1154; Harper v. Lott Town & Imp. Co. (Tex. Com. App.) 228 S. W. 188; Brackenridge v. Claridge, 91 Tex. 527, 44 S. W. 819, 43 L. R. A. 593. No reference can be drawn from the evidence with reference to the negotiations leading up to the advance of the $10,450 made by Blake to the R. L. Lumber Company, other than that it was a contract between Blake and the R. L. Company, and that the bank was no party thereto and could not be held liable for a breach thereof.

[5] Second. Burlew, while an active vice president of the bank, was also secretary treasurer of the two lumber companies, in which he was largely interested and of which he was general manager at the time the $10,450 advance was made to the R. L. Lumber Company and the $10,000 to the other company. As has been already stated, all of the negotiations and transactions with reference to which Blake testified were had with Burlew. All of the instruments passing to Blake, as offering security for the advances made by him, were signed by Burlew as secretary and by the president of the lumber companies.

[6] It is evident, we think, that Burlew was not free to act fairly for the bank. He had a personal interest in the lumber companies, and was called upon, as their manager, to pay their indebtedness to the bank, and to meet such demands of the bank, and other indebtedness due by him, he had his companies to procure the advances made to them, and to secure payment of such advances his companies executed written instruments by which they turned over to Blake their respective stocks of lumber. It is well settled that a corporation, such as the bank in the instant case, is not bound by the acts of its agents in cases where the agent is likely to be influenced by his own personal interest or for any reason that would prevent his acting fairly for his principal, where such facts are known to those dealing with the agent. Nor must it be presumed in such case that the principal had knowledge of acts of its agent in promoting his own interest. Amarillo National Bank v. Harrell (Tex. Civ. App.) 159 S. W. 858; Guaranty State Bank v. Bland (Tex. Civ. App.) 189 S. W. 546; General Casualty Co. v. McCurdy (Tex. Civ. App.) 183 S. W. 796; O'Brien v. Bank & Trust Co. (Tex. Civ. App.) 241 S. W. 556; Lester v. Hawkins (Tex. Civ. App.) 181 S. W. 481. In the case first cited, the court said:

"In matters touching the agency, an agent cannot act so as to bind his principal when he has an adverse interest in himself. Story on Agency, p. 210."

Blake knew of the personal interest Burlew had in the lumber companies at the time he made the advances to Burlew. He also knew that the bank had a mortgage on all the assets of the Heyman-Pate Lumber Company to secure its debt, and was told by Burlew that it also had a lien on the lumber of the R. L. Lumber Company to secure its debt due by such company.

In Lester v. Hawkins, supra, it is said:

"Though it may be true that the agreement was for the purpose of paying in part a prior lien on the bank's mortgaged property, still there might be several conceivable reasons why the bank might object to such an agreement. It might consider other methods of protecting its interest and paying the prior lien than that of exchanging the partnership sheep, and, unless such an agreement was authorized, or thereafter ratified, on account of the double position of Lester, it could not bind the bank, even if we were entitled to assume that the president of a national bank had the authority by virtue of his position to make such an agreement. 'A person will not be permitted to take upon himself the character of an agent where, on account of his relation to others, or on account of his own personal interests, he would be compelled to assume incompatible and inconsistent duties and obligations. An agent owes to his principal a loyal adherence to his interest, and it would be a fraud upon the principal, and would contravene sound public policy, to permit a person, without the full knowledge and consent of his proposed principal, to enter into a relation involving such duty, when his allegiance had already been pledged to one having adverse interest, or when his own personal interests would be antagonistic to those of his principal.' 1 Mechem on Agency (2d Ed.) § 177; Bank v.

Harrell [Tex. Civ. App.] 159 S. W. 863; Hawkins v. Bank [Tex. Civ. App.] 175 S. W. 163; Jines v. Astle [Tex. Civ. App.] 170 S. W. 1081, where on motion for rehearing there is a full discussion of similar questions."

[7, 8] Third. The bank, through its agent Burlew, or otherwise, could not have made a binding parol agreement to guarantee performance of the contracts made by Burlew with Blake, in that such agreement would have been in violation of the statute of frauds, and in that such agreement, if made, would be an ultra vires agreement, and therefore void, except in so far as the bank might have received benefits by reason of such agreement, and in the latter circumstances the bank could be held liable only for such sum as it received by reason of said agreement.

It is shown, however, that the bank received no part of the funds advanced by Blake as payment upon the debts of the lumber companies to it. It was clearly shown that as an accommodation to Burlew and the R. L. Lumber Company, Blake, on the 16th day of October, 1923, executed his note for $6,000 payable to the bank; that this note was executed upon the request of Burlew, the secretary treasurer and general manager for the R. L. Lumber Company, that said company might use the same in payment of its indebtedness to the bank; that said note was passed by Burlew to the bank, for which the R. L. Lumber Company received credit; that, when the advance of $10,450 was made by Blake about a month later, it was deposited in the bank to the credit of the R. L. Lumber Company subject to check; and that the R. L. Lumber Company gave Blake a check for $6,000, which he passed to the bank and took up his note. So it appears that the advance was not made to enable the R. L. Lumber Company to pay its indebtedness to the bank, which had been settled by the note of Blake about a month before the advance of the $10,450 was made, and thus it is made to appear that the bank received no benefits by reason of the contracts entered into between Blake and Burlew; therefore the bank cannot be held liable for any loss sustained by Blake in making said advances. Articles 1164 and 1165, Vernon's Sayles' Civil Statutes, 1914; City National Bank v. Morgan (Tex. Civ. App.) 258 S. W. 572; McCaleb v. Boerne Mfg. Co. (Tex. Civ. App.) 173 S. W 1191; Bowman Lbr. Co. v. Pierson, 110 Tex. 543, 221 S. W. 930, 11 A. L. R. 547.

[9] Fourth. It is shown that, at the time Blake advanced the $10,000 to the Heyman-Pate Lumber Company, the company was largely indebted to him, and that thereafter in his transactions with the company he made other advances to it, and that the proceeds of the sale of the lumber, turned over to him by its conveyance given to secure the $10,000 loan, was applied as a credit upon the entire indebtedness owing by said company. It is not shown what sum Blake received for the lumber, but only that, after the same had been sold and the proceeds of such sale applied to the entire debt of the lumber company, the company owed him a balance of $4,630.85. It is apparent that it is not shown that Blake suffered a loss by accepting the conveyance of the lumber as a security for the $10,000 loan. So far as shown, he may have been in better shape with the company at the end of his transactions with it than at the time he made the loan.

And, as to the loan of the $10,450 to the R. L. Lumber Company, it is shown that at the time this loan was made the R. L. Lumber Company owed Blake, in addition to the sum of $6,000, the amount of the note made payable to the bank to be applied to its credit, some $1,500 or more, and it is not shown what sum Blake received for the lumber of that company, but it is only shown that, after the proceeds of the sale thereof were applied to the entire indebtedness, there remained a balance unpaid of $2,735.72.

It is apparent that it is not shown that Blake suffered a loss by the advance of $10,-450 to the R. L. Lumber Company. To the contrary, it is shown that, after applying the proceeds of the sale of the lumber turned over to him by said company, the company owed him much less than it did at the time the advance was made.

For the reasons pointed out, we think the judgment should be affirmed, and it is so ordered.

Affirmed.